THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EUGENE LUETKEMEYER, Defendant-Appellant.

Fourth District   No. 15343

Opinion filed August 16, 1979.—Rehearing denied September 17, 1979.

Gerald J. McGivern, of Wiseman, Shaikewitz, McGivern & Wahl, of Alton, for appellant.

Lee J. Plummer, State's Attorney, of Jerseyville (Marc D. Towler and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

On June 8, 1977, the defendant, Eugene A. Luetkemeyer, was charged by information with unlawful possession of more than 500 grams of cannabis in violation of section 4(e) of the Cannabis Control Act (Ill. Rev. Stat. 1977, ch. 56½, par. 704(e)). Following bench trial, defendant was found guilty and sentenced to a term of 2 to 10 years' imprisonment. On appeal, defendant contends that (1) the trial court erred in denying defendant's motion to suppress evidence seized from a house rented by the defendant, and (2) he was not proven guilty beyond a reasonable doubt.

The record reveals that in October of 1974 defendant leased a house from W. R. Ratz which was located in Elsah Township, Jersey County, Illinois. Defendant ceased to use this house as his principal residence after December 1976, but continued to lease this property and pay the monthly bills for electrical service. On June 6, 1977, defendant met with Edward R. Lewitz, an agent for Ratz, at the leased property to discuss a defective water pump in the basement. Following the conversation, Lewitz contacted Cy Bunting to perform the necessary work on the water system.

Bunting was a full-time engineer for Principia College, but operated a part-time home-repair company in Elsah. Bunting was also a special deputy sheriff of Jersey County, village marshall of Elsah, and a captain with the Quarry-Elsah Fire Protection District. On June 7, 1977, Bunting went to the house leased by the defendant to examine the pump. Unable to obtain the desired water pressure, Bunting left the basement to check faucets in the kitchen and in a bathroom off the master bedroom for possible pressure leaks. While walking through the house, Bunting noticed accumulations of trash but very little furniture or personal belongings. It appeared to Bunting that the house was not occupied. Because he was a friend of Ratz, Bunting testified that he became concerned over the condition of the house and the possibility of fire.

Leaving the bathroom, Bunting smelled a strong odor which he described as "hot or real dry," emanating from a closet in the master bedroom. Bunting opened the closet door and saw a small paper trash bag which was open at the top. Inside, Bunting observed a substance that appeared to him like hay. Suspecting that it was contraband, he picked up several strands and put some in his shirt pocket for the purpose of having it analyzed. Bunting took the substance to the Jersey County sheriff's department where a field test indicated the substance was cannabis. After a search warrant was obtained, based upon Bunting's affidavit, police officers searched the premises later that day and confiscated over 300 pounds of a substance determined to be cannabis. Bunting was present during the execution of the search warrant but did not assist in the search.

Prior to trial, defendant filed a motion to quash the search warrant and to suppress the evidence obtained thereby on the grounds that the warrant was obtained solely from information gained from the alleged illegal search and seizure made by Bunting. Following a hearing on the motion, the court ruled that Bunting entered the house with the permission of Lewitz and the implied permission of the defendant. The court further found that Bunting entered the house in his capacity as operator of the Elsah Service Company and private citizen and not in his capacity as deputy sheriff or village marshall of Elsah or in his capacity with the Quarry-Elsah Fire Protection District.

Defendant contends that the trial court erred in denying his motion to suppress because Bunting was acting as a governmental agent at the time of the initial search of defendant's house. Accordingly, since Bunting conducted his search without a search warrant, defendant maintains that Bunting's search and seizure was unlawful and violative of the Fourth Amendment of the United States Constitution. Therefore, defendant argues, the subsequent search by police officers, pursuant to a search warrant issued upon Bunting's affidavit, was likewise unreasonable and all evidence seized thereunder should be suppressed.

■■ The Fourth Amendment of the United States Constitution provides for the right of citizens to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. Evidence obtained in violation of this guarantee is subject to exclusion. (*Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684.) The constitutional proscription against unreasonable searches and seizures, however, does not apply to searches or seizures conducted by private individuals. (*Burdeau v. McDowell* (1921), 256 U.S. 465, 475, 65 L. Ed. 1048, 1051, 41 S. Ct. 574, 576; *People v. Heflin* (1978), 71 Ill. 2d 525, 539, 376 N.E.2d 1367, 1373, *cert. denied* (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848.) The Supreme Court has stated that a search conducted by a private

individual will be subject to constitutional guarantees when the individual conducting the search can be regarded as acting as an agent or instrument of the State "in light of all of the circumstances of the case." *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 487, 29 L. Ed. 2d 564, 595, 91 S. Ct. 2022, 2049.

We have found no relevant Illinois decisions further defining standards upon which to judge whether an individual's actions were undertaken as an officer of the government so as to be subject to search and seizure restrictions. Other jurisdictions have had occasion to address this issue. In *Oregon v. Pearson* (1973), 15 Ore. App. 1, 514 P.2d 884, the defendant left her automobile at a garage for servicing. In preparing the car for service, the serviceman opened the car door and smelled what he described as a strong odor of marijuana. He looked into the car's ash tray and discovered the contraband. The serviceman was a city police reserve officer and had received training in recognizing the odor of marijuana. He promptly notified local police. The Oregon Appellate Court held that official involvement is not measured by the primary occupation of the actor, but by the capacity in which he acts at the time in question. The court concluded that the searcher acted in his capacity as a serviceman and not as a police officer. The court further stated that a private person who is in a place where he has a right to be and who observes contraband, has an obligation to act as did the serviceman.

In *J.M.A. v. State* (1975), 542 P.2d 170, a foster parent became suspicious and discovered marijuana in a search of the foster child's room. The marijuana was turned over to police. Counsel for the foster child filed a motion to suppress on the ground that the foster parent was acting as an agent of the State. Although noting that a foster parent does act in part as an agent of the State, the Supreme Court of Alaska reasoned that the nature of the duties of foster parents does not encompass responsibilities of law enforcement. The court, accordingly, held that foster parents are not agents of the State for purposes of the Fourth Amendment.

In *People v. Wachter* (1976), 58 Cal. App. 3d 911, 130 Cal. Rptr. 279, an off-duty deputy sheriff was invited onto the defendant's property by a friend following a fishing trip. While touring the premises, the officer's curiosity was aroused by a water hose leading down a slope on the property. Upon investigation, the officer, based upon his police experience, observed, in defendant's garden, what appeared to be marijuana plants. The officer notified police who used this information as a basis for the issuance of a search warrant. The court rejected defendant's contention that a policeman can never be considered off-duty for Fourth Amendment purposes. The court held that the officer had the status of a private citizen when he entered the defendant's property

and, thereafter, communicated information concerning the marijuana to police.

In *People v. Wolder* (1970), 4 Cal. App. 3d 984, 84 Cal. Rptr. 788, a police officer learned that his daughter and her roommate were being evicted from their apartment. The officer and the father of his daughter's roommate decided to visit the landlord to find out the reasons for the eviction. During the course of the discussion with the landlord, the officer became suspicious when the landlord told of a conversation with the daughter which the officer recognized as containing information that was untrue. The landlord allowed the officer to examine some cartons stored by the officer's daughter in a garage. Upon examination, the officer discovered a large quantity of office equipment and what appeared to him to be burglary tools. The officer then notified police. The court found that the officer had gone to the apartment out of concern as a father for his daughter's association with disreputable persons but was unaware of his daughter's involvement in a burglary. Instead of taking official action himself, the officer notified police. The court, accordingly, held that the officer had acted as a private citizen and that his search, therefore, did not violate the Fourth Amendment.

■■ We are persuaded by these cases that the test of whether an individual conducting a search is to be considered an agent of the State is determined by the capacity in which the individual acted during the time in question rather than by his primary occupation.

In contending that Bunting was acting in the capacity of a government agent in the instant case, the defendant places principal reliance upon *Commonwealth v. Eshelman* (1978), 477 Pa. 93, 383 A.2d 838. In *Eshelman*, an off-duty auxiliary policeman trespassed on private property upon which defendant resided. While on this property, the officer came upon defendant's car in which he observed a number of thin packages wrapped in newspaper. The officer suspected the packages contained marijuana because of information he had received in his duties at the police station concerning a method used to wrap marijuana. The officer seized one of the packages and took it to the police station without opening it. At the request of the city chief of police, the officer took the package to the State police for testing where it was determined to contain marijuana. The Supreme Court of Pennsylvania concluded that the officer was acting as a police officer when he removed the package and turned it over to police. The court noted that the auxiliary officer engaged in normal police functions with some frequency. The court also stated that the officer's action in taking the package to the State police for testing after having delivered it to his local superior was inconsistent with the theory that he acted as a private citizen. The court further found that the acts of the police chief had ratified the officer's search and seizure on

behalf of the State. *Eshelman*, however, is distinguishable from the facts of the instant case.

■ It is clear in the instant case that Bunting performed certain law enforcement functions on occasion. The record reveals, however, that Bunting had not served as a deputy sheriff for several years and could not do so without a specific request from the sheriff. The defendant's home was located outside of Bunting's jurisdiction as village marshall of Elsah. There was no requirement that Bunting make inspections for fire hazards in his capacity as fire captain. Moreover, his practice as fire captain was to obtain a home owner's consent before searching a home for hazardous materials or conditions. There is no indication in the record that Bunting had been contacted by police to investigate the defendant or the defendant's residence, nor is there any evidence to suggest that Bunting's expressed personal concern for the safety of the premises was a subterfuge. Unlike *Eshelman*, it remains undisputed that Bunting was invited on the premises in the private capacity of a serviceman for the purpose of repairing a water pump. We find nothing in Bunting's conduct to suggest that he acted other than as a private citizen. Accordingly, we conclude that Bunting was not acting as a government agent when he conducted the search and that the subsequent search warrant was properly issued and the evidence introduced at trial was properly seized.

■ The defendant lastly contends that he was not proved guilty beyond a reasonable doubt because the State failed to establish that the defendant had knowledge and exclusive possession of the cannabis. It is clear that in order to prove that the defendant was in constructive possession of the cannabis discovered in his home, the State must establish that he controlled those premises. (*People v. Calhoun* (1977), 46 Ill. App. 3d 691, 694, 361 N.E.2d 55, 57.) If it is shown that the defendant controls the premises, an inference of both knowledge and possession arises which may sustain a guilty verdict. (*People v. Nettles* (1961), 23 Ill. 2d 306, 308-09, 178 N.E.2d 361, 363; *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939; *People v. Wolski* (1975), 27 Ill. App. 3d 526, 528, 327 N.E.2d 308, 309.) Mere access by other persons is insufficient to defeat a charge of constructive possession. *People v. Mack* (1957), 12 Ill. 2d 151, 163, 145 N.E.2d 609, 614.

In *Mack*, the defendant acknowledged being the lessee of the apartment, but denied having lived there shortly before heroin was discovered during a raid on the premises. The defendant testified that no one else had access to the premises outside the possibility of a janitor, although other evidence reflected that additional persons had been present in the apartment. Defendant had been observed entering and leaving the apartment just before the raid occurred. In upholding the defendant's conviction for unlawful possession of heroin, the supreme

court found that the circumstances supported an inference that the defendant had knowledge of the presence of the narcotics in the apartment and that the apartment was within his immediate and exclusive control. ■■ In the instant case, defendant did not occupy the residence in question as his principal place of abode for at least six months prior to the date the contraband was seized. Nevertheless, the record reflects that defendant continued to lease the premises and continued to pay electric bills attributable to the residence. The record reflects that the house contained several items of furniture and personal effects, and Lewitz testified that defendant occupied the house on a part-time basis. Defendant's continued interest in the premises is further manifested by his request of the caretaker, Lewitz, to repair the defective pump. Defendant's conversation with Lewitz, concerning the pump, took place in the residence just one day prior to the search. While it may have been possible for other persons to have obtained access to the premises without a key, there is no indication that other persons obtained free access as was the case in *People v. Schriber* (1970), 34 App. Div. 2d 852, 310 N.Y.S.2d 551, upon which defendant relies. Furthermore, we are persuaded that the extraordinary amount of the cannabis that was discovered on the premises, totaling over some 300 pounds, permits a fair inference that the defendant was not unaware of the presence of the contraband. Upon these facts, we conclude that the evidence was sufficient to prove that defendant had knowledge of the presence of the cannabis and maintained such control over the premises as to establish constructive possession.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

CRAVEN and TRAPP, JJ., concur.