THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiffs-Appellees, v. JIMMIE L. BIRGE, Defendant-Appellant.

Second District   No. 2—84—0459

Opinion filed October 23, 1985.

782

James M. Boback, Louis A. Bianchi, and Robert Wilbrandt, all of Boback & Bianchi, Ltd., of Crystal Lake, for appellant.

Theodore Floro, State's Attorney, of Woodstock (Phyllis J. Perko, Marshall Stevens, and Cheri A. Novak, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Defendant, Jimmie L. Birge, was convicted in a bench trial of the Class 3 felony of unlawful possession of more than 500 grams of cannabis (Ill. Rev. Stat. 1981, ch. 56½, par. 704(e)), and of the Class 2 felony of unlawful possession of the same substance and amount with an intent to deliver (Ill. Rev. Stat. 1981, ch. 56½, par. 705(e)). He was sentenced to three years' imprisonment.

Defendant appeals, contending: (1) the court erred in denying him an evidentiary hearing under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674; (2) the court erred in allowing a police officer to testify to defendant's oral statements which had not been disclosed in discovery; (3) the State failed to prove his guilt beyond a reasonable doubt; and (4) his sentence should be vacated because the court considered improper matters.

On May 19, 1982, police officers from several jurisdictions executed a search warrant at a residence at 237 Indian Trail, Lake in the Hills. The home was owned by defendant's mother and rented to Margaret Birge, defendant's former wife. Numerous guns, money and 22,650 grams (51 pounds) of cannabis were seized. The estimated street value of the cannabis was $450 per pound and $60,000 for the total amount. Margaret Birge was arrested and an arrest warrant for defendant was issued the next day. Defendant was arrested in November 1983.

The complaint for search warrant contained the sworn statement of police officer William Pedersen. After establishing the reliability of a police informant, the affidavit recited:

"On this date 19 May 1982 this informant stated to me that on 18 May 1982 he purchased one pound of marijuana from a M/W, known to him as James Birge. This informant described James Birge as a M/W, 5-8, !&% [*sic*] lbs, and app 39 years old. This informant further stated that the marijuana he purchased was packaged in a clear plactic [*sic*] bag and the informant described the marijuana in the plastic bag as a green leaf substance. This informant further stated that he paid James Birge $450.00 U.S.C. for the marijuana. This informant then stated that he observed a large cardboard box which contained a quantity of simillar [*sic*] clear plastic bags, each containing a quantity of green crushed leaf. This informant further stated that he purchased the marijuana from James Birge and when he observed the card board box with the plastic bags of green crushed leaf he was in the house located at 237 Indian Trail, Lake in the Hills, Illinois. This informant then stated that when

he left the house located at 237 Indian Trail, Lake in the Hills, Illinois, he used a portion of the marijuana he purchased from James Birge and received the same effect he has in the past whne [sic] he has used marijuana. This informant further stated that he has been a user of marijuana and controlled substances for the past five years. Because of the above informant I, William Pedersen, believe that there is still a quantity of marijuana in the possession of James Birge, located at 237 Indian Trail, Lake in the Hills, Illinois."

Before trial, defendant filed a motion to suppress the evidence seized in the search in which he sought an evidentiary hearing to test the truthfulness of the affidavit for search warrant. Attached to the motion were the affidavits of defendant, Margaret Birge (his former wife), Tommy and Jeanette Birge (his children), and Margaret Nozeka (defendant's former mother-in-law). All affiants stated that they were home either all or part of 18 May 1982, that they were not the confidential informant; that they did not see or speak with anyone other than family members; and that they saw no cardboard box containing green crushed leaf. Margaret Birge stated that she and the defendant went shopping for shrubs on 18 May 1982, and that defendant spent the rest of that day planting shrubs with his son. Defendant denied selling or possessing marijuana on May 18 or on any other occasion. The court denied the motion.

On the date set for trial, the State advised defendant it would use at trial certain oral statements defendant made to police officer Steven Schinkel, although the State had not disclosed the statements in discovery. The defendant sought exclusion of the testimony because the statements had not been contained in police reports furnished the defense, and because he had relied on the State's nondisclosure in preparing the defense. Defense counsel conceded he had reviewed the transcript of the preliminary hearing, at which Officer Schinkel had testified, and so was aware of the statements and not surprised regarding their existence. The court offered to continue the case, but defense counsel did not want a continuance. The court refused to bar the testimony, and the trial was continued to the next day for another reason.

At defendant's trial, police officers testified regarding the search of the residence at 237 Indian Trail on May 19, 1982. At that time Margaret Birge, her two children and the children's grandmother were the only persons there. Chief Kenneth Bartels of the Algonquin police department testified that police found and seized plastic bags, two scales, and numerous guns in a closet in the family room. A

locked, chest-type freezer was found in an attached garage; it was forced open and police found numerous plastic bags containing cannabis. The police learned from Ms. Birge that defendant had been at the home the day before but had left on a trip. Bartels also testified they found a valid Illinois Firearms Owner's Identification Card in defendant's name and that such cards were typically mailed to an applicant's residence.

Detective John Corcoran of the organized crime division—narcotics section, of the Chicago police department testified that a search of the master bedroom of the home revealed a "male" and a "female" dresser or bureau. The male dresser contained men's clothes and jewelry, such as cuff links. The closet in that bedroom contained both men's and women's clothing.

Detective Corcoran had a conversation with Margaret Birge that day regarding the lock on the freezer, but no key was recovered, and the lock had to be forced open. The detective testified that in his opinion, because of the amount of cannabis found and the way in which it was packaged, mostly in one-pound bags, the cannabis was possessed for wholesale distribution and not personal consumption.

United States Currency in the amount of $2,850 was also seized at the home. Police Chief Bartels believed the money was found in the freezer, but he was not sure.

Police officer Gerald Hendricks testified that on November 22, 1983, he had a conversation with defendant while in custody, and defendant told him his address was 237 Indian Trail, Lake in the Hills. The officer also testified that he recalled defendant told him he had "been on the run for quite a long time," and that he had left the area when he learned an arrest warrant had been issued.

Found among defendant's personal property after his arrest was an Illinois driver's license with the address 237 Indian Trail. It was issued on April 7, 1981, and would expire on August 6, 1984. Defendant listed the same address on several documents he completed for the police after his arrest, but also found among defendant's personal property were his 1981 and 1983 Illinois fishing licenses, which bore other addresses. A real estate tax bill for the property located at 237 Indian Trail, which was listed in the names of Grover and Jean Summer, was also found in defendant's wallet. Two stamps on the bill indicated that taxes had been paid on May 13, 1983, and September 6, 1983. Jean Summer, defendant's mother, was the sole owner of the home when it was searched, as her husband had died.

Defendant also listed 237 Indian Trail as his address in various pleadings and court documents in the instant case. The affidavit of

Margaret Birge submitted in support of defendant's motion to suppress recited that defendant lived at 237 Indian Trail "most of the time, but would be gone for weeks at a time."

Officer Steven Schinkel testified that on November 22, 1983, he had a conversation with defendant, while in police custody, after he had given him *Miranda* warnings. According to Schinkel, when he asked defendant where he obtained the cannabis, defendant replied he "didn't get it from anywhere." Defendant also told Schinkel he knew there was an arrest warrant for him the day after the search, and that he did live at the home when the warrant was executed but that he was gone that day. The officer also asked defendant how long he had been "dealing" cannabis, and defendant replied he doesn't. Defendant also told the officer he had known the cannabis was at the house, but that it was not his and that he "was holding it for someone." When the officer asked defendant if he would assist the police in arresting the true owners, he stated he could not do so "because he did not know the same people now that he did back in May" when "his home" was searched.

On cross-examination, the defense established that when Officer Schinkel testified at the preliminary hearing on December 14, 1983, he failed to mention defendant's alleged statements that he had been "holding" the cannabis for others, that he did not "deal" drugs and that he no longer knew the "same people" as he did in May 1982. However, the officer had stated that defendant told him the cannabis found at the house was not his, but that he had known it was there.

Defense witness Jean Sumner, defendant's mother, testified that prior to 1979 defendant and Margaret Birge were divorced and that since 1979 Margaret rented the house at 237 Indian Trail from her and lived there with her children. Mrs. Sumner testified defendant lived in several locations in 1982, including her home in Fairbury, while she was hospitalized or convalescing. According to her, from 1980 through November 1983, defendant never had a permanent address because he was "drifting around."

The witness also testified that when defendant stayed at 237 Indian Trail on rare occasions, he slept in the den and not in the master bedroom with Margaret Birge. Mrs. Sumner stated she had always paid the taxes on the home and Margaret paid the rent and utilities.

Mrs. Sumner visited the home in 1982, but could not recall how many times. She was hospitalized for most of April and May 1982, and had no personal knowledge whether defendant was periodically staying at 237 Indian Trail besides staying at her home.

Jeanette Birge, defendant's 18-year-old daughter, testified that

when defendant stayed at the house he slept in the den and defendant did not receive mail at the house. Jeanette also testified her mother bought the freezer when defendant brought them a slaughtered pig. According to Jeanette, the freezer was locked and her mother kept the key; Jeanette would obtain the key from her to open the freezer to retrieve the meat. She never asked for the key from her father, and she never heard her mother ask him to open the freezer. Jeanette never saw anything but meat in the freezer, the last time she opened it being the day before the search.

Jeanette conceded her mother had been tried for possession of cannabis and that she had been present when she testified. She denied having heard her mother testify that it was defendant who possessed the only key to the freezer and that she had no access to it.

■■ Defendant's first claim of error is that the court should have held an evidentiary hearing under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. The trial court denied defendant a hearing on the grounds defendant had failed to expressly challenge the credibility of the officer-affiant.

In *Franks*, the Supreme Court permitted a limited challenge to the veracity of a warrant affidavit upon a "substantial preliminary showing" of a false statement by the affiant. The allegations of deliberate falsehood or of reckless disregard for the truth must be more than conclusory and must be accompanied by a statement of supporting reasons. Only the veracity of the affiant, not that of the informer, may be impeached. 438 U.S. 154, 171, 57 L. Ed. 2d 667, 98 S. Ct. 2674.

The instant search warrant was issued pursuant to the affidavit of police officer William Pedersen, a 15-year veteran of the Chicago police department. It recited that an informant, whose reliability had been established by prior investigations, told the officer that on May 18, 1982, he had purchased cannabis from defendant at the residence at 237 Indian Trail, Lake In the Hills.

In his motion to suppress, defendant merely asserted that the statements contained in the warrant affidavit were false or made recklessly. Defendant failed to indicate whether the officer-affiant lied or whether he knew or should have known that the informant's information was false. As such, defendant's unspecific challenge to the veracity of the warrant affidavit did not entitle him to a hearing under *Franks*. (*People v. Martine* (1985), 106 Ill. 2d 429, 436, 437 N.E.2d 262; *People v. Abata* (1985), 136 Ill. App. 3d 57; see also *People v. Garcia* (1982), 109 Ill. App. 3d 142, 145, 440 N.E.2d 269, *appeal denied* (1982), 92 Ill. 2d 570 (defendant contradicted the officer-affi-

ant's own observations).) While defendant argues here that his motion and affidavits made a preliminary showing that the informant did not exist and the police officer lied, he did not present that assertion below and cannot now urge it. *People v. Canaday* (1971), 49 Ill. 2d 416, 424, 275 N.E.2d 356; *People v. Kinion* (1982), 105 Ill. App. 3d 1069, 1076, 435 N.E.2d 533, *cert. denied* (1983), 460 U.S. 1014, 75 L. Ed. 2d 484, 103 S. Ct. 1256.

Nor, may we add, did defendant make a substantial enough preliminary showing of falsity required in order to mandate a hearing under *Franks*. Mere denials by the defendant of the facts alleged by the officer-affiant do not overcome the presumption of validity which attaches to complaint affidavits. (*People v. Kelly* (1983), 118 Ill. App. 3d 794, 797, 455 N.E.2d 826, *appeal denied* (1984), 96 Ill. 2d 569; *People v. Born* (1983), 113 Ill. App. 3d 449, 456, 447 N.E.2d 426; *People v. Coleman* (1980), 91 Ill. App. 3d 646, 651, 415 N.E.2d 553.) Thus, we must disregard the conclusory statements made by defendant and his family members in their affidavits merely denying the presence or sale of cannabis at the residence on May 18.

The only statements which can be said at all to controvert the recital in the warrant are those to the effect that (1) defendant purchased shrubs late morning or early afternoon on May 18 and spent the rest of the day planting them with his son; and (2) that they were home and saw no strangers at the residence.

In *People v. Martine* (1985), 106 Ill. 2d 429, 435-36, 478 N.E.2d 262, our supreme court affirmed the trial court's denial of a *Franks* hearing where the affidavits of two defense witnesses did not explain how defendant could not have sold cocaine to the informant on the day in question.

Similarly, in *People v. Rodriguez* (1983), 119 Ill. App. 3d 575, 578, 456 N.E.2d 989, *appeal denied* (1984), 99 Ill. 2d 533, it was held that defendant was not entitled to an evidentiary hearing where he could not substantiate his whereabouts prior to 10 a.m. on the morning of the alleged sale of drugs to the informant.

The averments in the instant case do not negate the possibility that defendant could have sold cannabis to the informant at home on May 18, because they do not satisfactorily account for defendant's whereabouts. Hence, we conclude that defendant did not make the threshold showing required by *Franks* in order to obtain an evidentiary hearing.

■ Defendant next contends he was denied a fair trial because a police officer was permitted to testify to defendant's oral statements despite the State's failure to disclose the statements in discovery.

The purpose of the discovery rules is to provide the defense with protection against surprise, unfairness, and inadequate preparation, as well as to afford the defense, in the case of a defendant's statement, an opportunity to investigate the circumstances surrounding the making of that statement. The prosecution generally cannot excuse its failure to disclose an oral statement in discovery by pleading failure of the police to advise it of it. (*People v. Goka* (1983), 119 Ill. App. 3d 1024, 1031-32, 458 N.E.2d 26; *People v. Young* (1978), 59 Ill. App. 3d 254, 257, 375 N.E.2d 442.) When faced with a discovery violation, a court has several available options, including granting a continuance or barring the testimony. (*People v. Taylor* (1982), 107 Ill. App. 3d 1019, 1022, 438 N.E.2d 565; *People v. Pickett* (1976), 35 Ill. App. 3d 909, 914, 342 N.E.2d 766.) Exclusion of testimony is a severe sanction which is not favored because it thwarts the goal of truth seeking (*People v. Lawson* (1977), 67 Ill. 2d 449, 456, 367 N.E.2d 1244; *People v. Stuckey* (1979), 78 Ill. App. 3d 1085, 1090, 398 N.E.2d 97, *appeal denied* (1980), 79 Ill. 2d 634); it is only a last resort, and a denial of exclusion is only reversible for an abuse of discretion. See *People v. Galindo* (1981), 95 Ill. App. 3d 927, 932, 420 N.E.2d 773, *appeal denied* (1981), 85 Ill. 2d 568.

It does not appear that the court abused its discretion in refusing defendant's request the day before trial to exclude testimony regarding defendant's statements. The defense was not surprised at the existence of the oral statements testified to at the preliminary hearing, as counsel admitted reviewing the transcript of that proceeding, and declined the court's offer of a continuance. Also, the defense had known for quite some time that Officer Schinkel was a potential witness, and so, had ample opportunity to interview him. No reversible error occurred as a result of the court's refusal to exclude the officer's testimony. *People v. Greer* (1980), 79 Ill. 2d 103, 120, 402 N.E.2d 203; *People v. Sanders* (1974), 56 Ill. 2d 241, 252, 306 N.E.2d 865; *People v. Davis* (1981), 103 Ill. App. 3d 792, 796, 431 N.E.2d 1210, *appeal denied* (1982), 92 Ill. 2d 569; *People v. Patterson* (1981), 102 Ill. App. 3d 844, 847, 430 N.E.2d 574, *appeal denied* (1982), 91 Ill. 2d 555.

■ As for the objection defendant here makes to trial testimony regarding additional oral statements not disclosed at the preliminary hearing, it is clear that defendant has waived his claim by his failure to object at trial. Moreover, he neither sought nor requested the court to disregard the testimony. Under such circumstances, any error has been waived. (*People v. Ferguson* (1981), 102 Ill. App. 3d 702, 714, 429 N.E.2d 1321; *People v. Myers* (1974), 20 Ill. App. 3d 83, 86, 312

N.E.2d 741.) Defendant's reliance on *People v. Miles* (1980), 82 Ill. App. 3d 922, 403 N.E.2d 587, is misplaced, as there the defense immediately objected after a police officer testified to an oral statement of defendant not previously disclosed, and also requested that the testimony be stricken and the jury be instructed to disregard it.

■ We next address defendant's argument that he was not proved guilty beyond a reasonable doubt. The court found defendant guilty of unlawful possession of cannabis and possession of cannabis with intent to deliver.

Multiple convictions are barred where more than one offense is carved from the same physical act or where one is the lesser included offense of the other. (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838.) A conviction for possession of cannabis, where there was also a conviction for possession of the same cannabis with an intent to deliver, must be vacated as the lesser included offense of possession with an intent to deliver. *People v. Jones* (1979), 75 Ill. App. 3d 214, 228-29, 393 N.E.2d 1132.

■ We need not only address whether defendant was proved guilty of possession with intent to deliver. To prove one guilty of possession of drugs, the State must establish a defendant's knowledge of the presence of the drugs and that the drugs were in defendant's immediate and exclusive control. (*People v. Embry* (1960), 20 Ill. 2d 331, 334, 169 N.E.2d 767; *People v. McNeely* (1981), 99 Ill. App. 3d 1021, 1023-24, 426 N.E.2d 296.) Actual physical personal possession is not required, as possession may be constructive. (*People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370; *People v. Bradi* (1982), 107 Ill. App. 3d 594, 600, 437 N.E.2d 1285, *appeal denied* (1982), 91 Ill. 2d 573.) As the court stated in *People v. Embry*:

> "The element of knowledge is hardly ever susceptible of direct proof, but it may be proved by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics at the place where they were found." (*People v. Embry* (1960), 20 Ill. 2d 331, 334, 169 N.E.2d 767.)

It is no defense that another had knowledge of the drugs and control of them, as defendant's possession may be joint with that of another. *People v. Embry* (1960), 20 Ill. 2d 331, 335, 169 N.E.2d 767; *People v. Cruz* (1982), 111 Ill. App. 3d 95, 99, 443 N.E.2d 769.

The trier of fact may consider the inferences which flow from the evidence (*People v. Nettles* (1961), 23 Ill. 2d 306, 309, 178 N.E.2d 361), and an inference of knowledge of the presence of drugs arises if a large amount of drugs is found. (*People v. Luetkemeyer* (1979), 74

Ill. App. 3d 708, 714, 393 N.E.2d 117, *cert. denied* (1980), 446 U.S. 938, 64 L. Ed. 2d 791, 100 S. Ct. 2157.) Finally, whether possession has been proved is a question for the trier of fact, and its determination will not be reversed unless the evidence is so palpably contrary to the verdict, or so improbable, as to raise a reasonable doubt of guilt. *People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370; *People v. Ortiz* (1980), 91 Ill. App. 3d 466, 471, 414 N.E.2d 1072.

Review of the evidence here fails to uncover such weaknesses that it can be held that defendant was not proved guilty. The court found that the home where the cannabis was found was defendant's permanent address, despite conflicting testimony that he sometimes lived elsewhere and sometimes used other addresses. This finding was well supported by the evidence. Defendant told a police officer he lived at 237 Indian Trail at the time of the search, and he almost always gave that as his address. Evidence that the address where the drugs were found was the same as for a defendant supports a conviction for constructive possession. (*People v. Galloway* (1963), 28 Ill. 2d 355, 359-60, 192 N.E.2d 370.) The finding of a defendant's personal property, such as guns here, and men's clothing in the residence searched, even though it was not proved the clothes were the defendant's although no other adult male lived there, is also highly probative. (*People v. Galloway* (1963), 28 Ill. 2d 355, 359-60, 192 N.E.2d 370.) The mere fact that defendant here may have periodically lived elsewhere does not critically impeach the evidence of his possession. See *People v. Luetkemeyer* (1979), 74 Ill. App. 3d 708, 393 N.E.2d 117.

Also supporting defendant's conviction is the evidence of his various oral statements. He admitted that he knew the cannabis was in the home, but denied it was his. Furthermore, it was proper for the court to draw an inference of guilt from defendant's flight after he learned of the warrant for his arrest. *People v. Zertuche* (1972), 5 Ill. App. 3d 303, 282 N.E.2d 201; *People v. Maldonado* (1971), 3 Ill. App. 3d 216, 278 N.E.2d 225.

As for proof of defendant's intent to deliver, it is sufficient to note he possessed 22,650 grams or 51 pounds of cannabis. Possession of such a great amount of cannabis entitled the court below to conclude it was possessed with an intent to deliver. (*People v. Schaefer* (1985), 133 Ill. App. 3d 697, 702, 479 N.E.2d 428; *People v. Kline* (1976), 41 Ill. App. 3d 261, 266, 354 N.E.2d 46.) Given the foregoing evidence, we will not disturb defendant's conviction for possession with intent to deliver.

■■ As we have vacated the conviction for unlawful possession of cannabis, we now consider whether the case should be remanded for

resentencing on the remaining conviction. Because we are unable to determine from the record before us upon which conviction the sentence of three years' imprisonment was imposed, we remand this cause for proper sentencing for the offense of unlawful possession of cannabis with intent to deliver. In doing so, we briefly consider defendant's claim that the court considered improper factors in imposing sentence only in order to avoid further error in resentencing. Defendant argues the judge gave undue weight to the fact defendant was unemployed. The record shows defendant quit his job as a truck driver three years prior to his arrest because of back and leg complaints. Defendant had a seventh grade education and could not read or write. In imposing sentence the judge concluded that defendant had not contributed anything to society in three years and had apparently supported himself by selling drugs. While defendant's occupation and status are relevant factors to be considered in sentencing, the mere fact of unemployment is not a proper factor in aggravation, as many persons are unemployed for various reasons.

The record fails to support defendant's other contention that the court considered in aggravation an offense for which he received supervision as it is apparent defendant had received probation for that offense.

For the above-stated reasons, the conviction for unlawful possession of cannabis with intent to deliver is affirmed and the sentence imposed thereupon vacated and the cause remanded for resentencing consistent with this opinion. The conviction for possession of cannabis, and any sentence imposed thereon, is vacated.

Affirmed in part; vacated in part and remanded.

SCHNAKE and UNVERZAGT, JJ., concur.