2022 IL App (2d) 200125-U
No. 2-20-0125
Order filed February 16, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 08-CF-3371 |
| TYWAN STARNES, | ) ) | Honorable Ronald J. White, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Bridges and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court did not err in its second-stage dismissal of defendant's postconviction claim that trial counsel was ineffective for failing to call defendant's ex-girlfriend to testify at trial that defendant did not reside at the house where police found guns that were the basis of defendant's conviction of being an armed habitual criminal. There was not a reasonable probability that her testimony would have changed the outcome at trial given the abundant evidence connecting defendant to the residence. (2) Postconviction counsel did not provide unreasonable assistance by failing to subpoena the ex-girlfriend to testify at a second-stage hearing, where persistent efforts to locate her during the trial and postconviction proceedings were unsuccessful.

¶ 2    Following a jury trial, defendant, Tywan Starnes, was convicted of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2008)). Trial evidence revealed that defendant

constructively possessed guns that the police found at 922 Church Street in Rockford. After trial, defense counsel filed a motion, arguing his ineffectiveness for failing to call to testify Carrie Northrup, defendant's ex-girlfriend. Northrup told investigators that defendant lived with her at 1325 Green Street in Rockford when the incident happened. The trial court denied the motion, finding that trial counsel was not ineffective. The court sentenced defendant to 22 years' imprisonment. He appealed, and we affirmed. *People v. Starnes*, 2012 IL App (2d) 110999-U.

¶ 3     Defendant petitioned *pro se* for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 (West 2012)), the trial court found that the petition stated the gist of a constitutional claim, and it appointed postconviction counsel to represent defendant. Postconviction counsel, who had great difficulty maintaining contact with Northrup, filed an amended petition, arguing that trial counsel was ineffective for failing to call Northrup to testify at trial. The State moved to dismiss. The trial court understood the difficulty postconviction counsel was having in contacting Northrup and suggested that counsel subpoena Northrup to testify at the hearing on the State's motion to dismiss. Counsel ultimately did not subpoena her, and the trial court granted the motion to dismiss. Defendant timely appeals from that dismissal. He argues that (1) he made a substantial showing that his trial counsel was ineffective for failing to call Northrup to testify at trial and (2) postconviction counsel provided unreasonable assistance for failing to subpoena Northrup to testify at the hearing on the State's motion to dismiss the amended petition. We affirm.

¶ 4                                  I. BACKGROUND

¶ 5     Before trial, the sheriff attempted several times to serve Northrup with a subpoena. Most of the subpoenas were returned unserved with a notation that the sheriff could not locate Northrup.

¶ 6     Evidence presented at trial revealed that, on August 21, 2008, police responded to a call of shots fired around 922 Church Street in Rockford. The home at that address consisted of two

apartments—one on the first floor and the other on the second floor. A door and a staircase separated them.

¶ 7    While at the scene, officers spoke to defendant and his brother in the doorway of 922 Church Street. Defendant "identified himself as Tywan Starnes and indicated that [922 Church Street] was his residence." Later that day, when officers were marking evidence outside the home, defendant, who was angry, approached the police and yelled:

> " 'Y'all just want to help them. They shoot at "*my house*" and y'all just want to help them.' " (Emphasis added.)

While investigating, police also discovered a car registered to defendant parked in front of the home.

¶ 8    The next day, the police executed a search warrant for 922 Church Street. A car registered to defendant was parked in the home's driveway. Five people were in the home, but defendant was not there. In the bedroom of the first-floor apartment, the police found three people, one of whom was defendant's sister. The police also discovered two loaded rifles underneath the bed in that bedroom. Although nothing with any of the three people's names on it was found in that bedroom or anywhere else in the home, police discovered documents with defendant's name on them in the bedroom. On a dresser in that room was a ComEd bill addressed to defendant at 922 Church Street. Inside of a dresser drawer in a bag were a Social Security card with defendant's name on it; a check made out to defendant; and a ComEd letter with defendant's name on it, referencing 922 Church Street, Unit 1 as the service location. In the first-floor kitchen, the police recovered a handgun on top of the refrigerator. In the living room of the first-floor apartment, police found two letters addressed to defendant at two different locations on Andrews Street in Rockford.

¶ 9    Various documents with defendant's brother's name on it were discovered in the second-floor bedroom where the police found defendant's brother. Police also found a car repair bill with defendant's brother's name on it on top of the dresser in the first-floor bedroom.

¶ 10    Before defendant presented his case, trial counsel asked the trial court if he could talk to defendant about whether defendant wished to call any witnesses. After a brief recess, trial counsel advised the court, in defendant's presence, that no witnesses would be called.

¶ 11    After trial, defense counsel filed a motion for a new trial, arguing his own ineffectiveness in failing to call various witnesses that defendant asked to be called. One of those witnesses was Northrup. According to a statement that Northrup gave to investigators (the written statement was not made part of the record but was read during the proceedings) Northrup and defendant had been together for 14 years; they never lived at 922 Church Street; they lived at 1325 Green Street for 8 months before the incident; and the lease for the 1325 Green Street residence was in defendant's name.

¶ 12    Defendant's trial attorney told the trial court that he was aware of Northrup and of defendant's desire to call her at trial. Still, he made the strategic decision not to call her, because she did not come across as a very good witness. Counsel explained that he was concerned at the time about her demeanor, her recollection of events, and her credibility on cross-examination. Counsel also believed at the time that calling Northrup to testify would not matter, because, even if defendant lived elsewhere with Northrup, the evidence still connected him to 922 Church Street and the area where guns were found. Counsel elaborated that, because Northrup could not account for defendant's whereabouts all the time, defendant might have stayed at 922 Church Street in addition to the 1325 Green Street home. The court found that trial counsel was not ineffective for

failing to call Northrup at trial, as counsel made a strategic decision not to call her and the result of the trial would not have been different if she testified.

¶ 13    Defendant appealed, arguing only that (1) he was not proved guilty beyond a reasonable doubt of constructively possessing any of the firearms found in the house and (2) a fee was improperly imposed. *Starnes*, 2012 IL App (2d) 110999-U, ¶ 16. We vacated the fee and found that defendant was proved guilty beyond a reasonable doubt of constructively possessing the firearms found in the home. *Id.*

¶ 14    Defendant petitioned *pro se* for postconviction relief. He argued, among other things, that trial counsel was ineffective for failing to call the three people police located in the first-floor bedroom to testify and that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal. The trial court found that defendant's petition stated the gist of a constitutional claim and appointed counsel to represent defendant.

¶ 15    Almost four years elapsed before postconviction counsel filed an amended petition. Although postconviction counsel had prepared an amended petition within one year after he was appointed, he could not file the amended petition because, among other things, he could not contact Northrup. In the amended petition, postconviction counsel argued, among other things, that trial counsel was ineffective for failing to call Northrup to testify that defendant lived with her at 1325 Green Street for three to four months before the incident. Although postconviction counsel alleged that appellate counsel was ineffective, he did not raise that issue as to the claim that trial counsel was ineffective for failing to call Northrup to testify. However, the State conceded that that was postconviction counsel's intention and the claim was treated as applying to trial counsel as well.

¶ 16    Eventually, trial counsel submitted Northrup's affidavit. Her affidavit was notarized about one month after filing the amended petition. The affidavit was not notarized sooner because

Northrup failed to attend her scheduled appointment with postconviction counsel. Northrup attested that defendant lived with her at 1325 Green Street for three or four months before the incident; defendant's sister and brother lived at 922 Church Street; defendant visited his brother and sister "often;" defendant put some of the utilities for 922 Church Street in his name because his brother who lived there had financial difficulties; defendant's car was parked at 922 Church Street because it broke down a few days before the incident; and "any of [defendant's] belongings or bills/mail found [at 922 Church Street] would have been due to him visiting and/or helping out by putting some of the utilities in his name."

¶ 17    Also filed along with the amended petition was counsel's certificate per Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). In that certificate, counsel confirmed that he (1) consulted with defendant in person to ascertain his contentions of deprivation of his constitutional rights, (2) examined the report of proceedings from the trial, and (3) made any amendments to the petition that were necessary for an adequate presentation of defendant's contentions.

¶ 18    The State moved to dismiss the amended petition. The State argued that trial counsel's decision not to call Northrup was reasonable trial strategy. And, because trial counsel was not ineffective for failing to call Northrup to testify, appellate counsel could not be ineffective for failing to argue trial counsel's ineffectiveness.

¶ 19    Ruling on the State's motion to dismiss was delayed for almost two years. During that time, counsel attempted to locate Northrup. While recognizing that having Northrup testify at a hearing on the State's motion to dismiss was procedurally improper, the trial court advised both parties that they could nevertheless call Northrup to testify. Moreover, the court noted that it had questions for Northrup about her affidavit and her statement to investigators. In noting that it would like to speak to Northrup, the court asserted:

"I just want to make sure I make the proper decision. Again, these postconviction matters are important. I was the trial judge here. I want to make sure that there was no ineffective assistance of counsel, because that would have made a difference to 12 people if she got up here and said [defendant] wasn't in that house, he had nothing to do with it. He maybe paid the bills or the electric was in his name or the utilities, but that wasn't—do you see what I'm saying?"

¶ 20    Postconviction counsel remained unable to locate Northrup. He advised the trial court at one point that he called her a dozen times, left voice messages, and never heard from her. Postconviction counsel asserted that he did not know what else he could do. Although defendant himself advised the court that he would do his best to locate Northrup, nothing indicated that he had success.

¶ 21    On the last status date before the court ruled on the State's motion to dismiss, the trial court told postconviction counsel "[i]f you wish to issue a subpoena, *** I will leave that up to you, or maybe [defendant] can make sure that she calls." No subpoena for Northrup was issued, and she was never found.

¶ 22    The trial court granted the State's motion to dismiss. Regarding trial counsel's failure to call Northrup to testify at trial, the court determined that counsel's decision was strategic and that her testimony would not have changed the trial's outcome.

¶ 23                                II. ANALYSIS

¶ 24    Defendant raises two issues on appeal. He argues that (1) he made a substantial showing that trial counsel was ineffective for failing to call Northrup to testify at trial and (2) postconviction counsel provided unreasonable assistance when he failed to subpoena Northrup to testify at the hearing on the State's motion to dismiss the petition.

¶ 25                    A. Ineffective Assistance of Trial Counsel

¶ 26    First we address whether defendant made a substantial showing that trial counsel was ineffective for failing to call Northrup to testify at trial. Before addressing that issue, we observe that defendant has not argued on appeal that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal. However, defendant did raise that claim in both his *pro se* and amended postconviction petitions. Given that the issue of appellate counsel's ineffectiveness was raised in these petitions and any claim that appellate counsel was ineffective rests solely on whether trial counsel was ineffective, we do not find, as the State argues, that defendant's claim is forfeited. See *People v. Dalton*, 2017 IL App (3d) 150213, ¶ 31 (rejecting State's argument that the defendant in postconviction proceedings forfeited claim of trial counsel's ineffectiveness, as the defendant raised appellate counsel's ineffectiveness in his petition). Moreover, we reject the State's claim that defendant invited any error in trial counsel's failure to call Northrup to testify because defendant said nothing when trial counsel indicated at trial that defendant would not be calling any witnesses. Although this court has determined that invited error applies in collateral proceedings (*People v. Kane*, 2013 IL App (2d) 110594, ¶ 20), a defendant may bypass the bar of the invited-error doctrine if he alleges trial counsel's ineffectiveness (see *People v. Lewis*, 2019 IL App (4th) 150637-B, ¶¶ 82-84). Here, defendant argues that trial counsel was ineffective and the claim has been properly presented for our review.

¶ 27    We now turn to the merits of defendant's claim. "The Act provides a three-stage mechanism for a defendant to advance a claim of a substantial deprivation of constitutional rights." *People v. McGee*, 2021 IL App (2d) 190040, ¶ 28. This appeal concerns a second-stage dismissal.

¶ 28    At the second stage of postconviction proceedings, "an indigent defendant is entitled to appointed counsel, the petition may be amended, and the State may answer or move to dismiss the

petition." *People v. Yawarski*, 2014 IL App (2d) 130327, ¶ 5. " 'If the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage.' " *McGee*, 2021 IL App (2d) 190040, ¶ 29 (quoting *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009)). "To survive dismissal, the petition must make a substantial showing of a constitutional violation." *Id.* (citing *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). "The trial court is precluded from engaging in any fact-finding or credibility determinations at this stage because '[a]ll well-pleaded factual allegations not positively rebutted by the trial record must be taken as true for purposes of the State's motion to dismiss.' " *Id.* (quoting *People v. Sanders*, 2016 IL 118123, ¶ 42). " 'The Act contemplates that such [fact-finding and credibility] determinations will be made at the evidentiary stage, not the dismissal stage, of the litigation.' " *Id.* (quoting *People v. Dupree*, 2018 IL 122307, ¶ 29). The "substantial showing of a constitutional violation that must be made at the second stage is 'a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief.' " *Dupree*, 2018 IL 122307, ¶ 29 (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35). " 'Where, as here, the circuit court dismisses a defendant's postconviction petition at the second stage after finding no substantial showing of a constitutional deprivation has been made, review of the dismissal is *de novo*.' " *McGee*, 2021 IL App (2d) 190040, ¶ 29 (quoting *Dupree*, 2018 IL 122307, ¶ 29).

¶ 29    Defendant argues that he made a substantial showing in his amended petition that his trial counsel was ineffective and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness. To prevail on a claim of ineffective assistance of either trial or appellate counsel, a defendant must satisfy the two-pronged test from *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Golden*, 229 Ill. 2d 277, 283 (2008) (two-pronged *Strickland* test applies to claims of ineffective assistance of appellate counsel); *McGee*, 2021 IL App (2d) 190040, ¶ 30. "Specifically,

'a defendant must prove [(1)] that defense counsel's performance fell below an objective standard of reasonableness and [(2)] that this substandard performance created a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.' " *McGee*, 2021 IL App (2d) 190040, ¶ 30 (quoting *People v. Graham*, 206 Ill. 2d 465, 476 (2003)). "To review the second-stage dismissal of a petition alleging a *Strickland* violation, we determine whether defendant made a substantial showing under the two-pronged ineffectiveness test." *Id.* In doing so, we may conclude that counsel was not ineffective based solely on the fact that there is no reasonable probability that the outcome would have been different, *i.e.*, that the defendant was not prejudiced. See *People v. Patterson*, 2014 IL 115102, ¶ 87 (ineffective-assistance claims may be decided on prejudice prong alone).

¶ 30    Defendant argues that his trial counsel was ineffective for failing to call Northrup to testify at his trial. "[C]ounsel's decision regarding whether or not to present a particular witness is generally a matter of trial strategy." *People v. Tate*, 305 Ill. App. 3d 607, 612 (1999). However, even strategic decisions must be reasonable. *People v. Cleveland*, 2012 IL App (1st) 101631, ¶ 60. "[C]ounsel may be deemed ineffective for failure to present exculpatory evidence of which he is aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense." *Tate*, 305 Ill. App. 3d at 612. All of that said, " '[o]nly if counsel's trial strategy is so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case will ineffective assistance of counsel be found.' " *People v. Peterson*, 2017 IL 120331, ¶ 80 (quoting *People v. Perry*, 224 Ill. 2d 312, 355-56 (2007)).

¶ 31    Defendant claims that trial counsel's decision not to call Northrup to testify at trial cannot be deemed reasonably strategic. In making this argument, defendant notes that "trial counsel's defense theory was that 922 Church Street was [his] brother's house, and that [defendant] simply

visited there and helped with the bills." Defendant contends that, without Northrup's testimony, the defense's theory was uncorroborated. Moreover, defendant argues that he was prejudiced when counsel failed to call Northrup, as there is a reasonable probability that the jury would not have found him guilty if it had heard from Northrup. To support his contention, defendant argues that "[t]he judge [for the postconviction proceedings] stated that he had presided over the trial, and he believed it *would* have made a difference to the jury if Northrup had gotten on the stand to testify that [defendant] did not live in the house and maybe just helped his family pay the bills." (Emphasis in original.)

¶ 32      Although we believe that trial counsel's decision not to call Northrup to testify was objectively reasonable given counsel's concerns about Northrup's demeanor, ability to remember the events, and credibility on cross-examination (see, *e.g.*, *People v. Flores*, 128 Ill. 2d 66, 106 (1989) (counsel's failure to call witness is not ineffective assistance if counsel believed that that testimony would be unreliable)), our focus is on the fact that defendant was not prejudiced when Northrup was not called to testify. That is, we cannot conclude that testimony that defendant lived with Northrup—coupled with explanations for why defendant's car was parked at 922 Church Street and ComEd communicated with defendant and not his brother—would have changed the jury's conclusion that defendant constructively possessed the guns found in the first-floor apartment.

¶ 33      On that issue, we find instructive *People v. Birge*, 137 Ill. App. 3d 781 (1985), and *People v. Luetkemeyer*, 74 Ill. App. 3d 708 (1979). In *Luetkemeyer*, the defendant was convicted of unlawful possession of more than 500 grams of cannabis. *Luetkemeyer*, 74 Ill. App. 3d at 709. At issue on appeal was whether the defendant constructively possessed the cannabis. *Id.* at 713. The appellate court determined that he did. *Id.* at 714. In so finding, the appellate court noted that,

although the "defendant did not occupy the residence in question as his principal place of abode for at least six months prior to the date the contraband was seized," other evidence established that the defendant had control over the premises. *Id.* For example, the defendant leased the premises, paid the electric bills for the home, left furniture and personal effects in the premises, and made repairs to the home. *Id.* Moreover, at least one other person knew that the defendant occupied the home on a part-time basis. *Id.*

¶ 34    Similarly, in *Birge*, the defendant was also convicted of unlawful possession of more than 500 grams of cannabis. *Birge*, 137 Ill. App. 3d at 783. The defendant was not found in the home when the police executed a search warrant for the cannabis, he was not the homeowner, he did not lease the premises, he did not pay the utilities, he received no mail at the home, and two recent fishing licenses found in the home listed a different address for the defendant. *Id.* at 783, 785-87. However, other evidence established that he had sufficient control over the premises. Specifically, the defendant had been at the home the day before the search warrant was executed, the defendant's Firearm Owner's Identification card was found on the premises, several documents listed the home as the defendant's address, and the defendant admitted to the police that the home was his residence. *Id.* at 785-87. In finding that the evidence of constructive possession was sufficient to establish the defendant's guilt, the appellate court noted that "[t]he mere fact that [the] defendant here may have periodically lived elsewhere does not critically impeach evidence of his possession." *Id.* at 791.

¶ 35    Given *Luetkemeyer* and *Birge*, we cannot conclude that defendant was prejudiced when trial counsel decided not to call Northrup to testify at trial. That is, we cannot conclude that calling Northrup to testify would have " 'created a reasonable probability that *** the result of the proceeding would have been different.' " *McGee*, 2021 IL App (2d) 190040, ¶ 30 (quoting

*Graham*, 206 Ill. 2d at 476). Both *Luetkemeyer* and *Birge* stand for the proposition that constructive possession can be established even if the defendant does not live exclusively in the home where the contraband was seized. As in *Luetkemeyer* and *Birge*, several documents with defendant's name on them were found in the first-floor apartment at 922 Church Street, which is where the guns were located. These documents included a ComEd bill, a letter from ComEd, an uncashed check, and a Social Security card, all of which were found in the first-floor bedroom where two rifles were located. Moreover, two letters addressed to defendant at other locations were found in the living room, and defendant's car was parked outside the home and in the driveway on the two consecutive days the police visited 922 Church Street. Although Northrup explained that defendant's car was there because it had broken down and that defendant's name was on correspondence from ComEd because defendant was paying the ComEd bills for his brother who lived there, even Northrup attested that defendant was "often" at 922 Church Street. Evidence of the documents found in the first-floor apartment confirms that fact.

¶ 36    Moreover, even if we do not consider the car or the communications with ComEd, defendant's actions and his possessions found throughout the first-floor apartment suggest that he had control over the premises. Specifically, defendant was at the home the day before the incident, he twice admitted to the police that he lived at 922 Church Street, his mail was found in the living room of the first-floor apartment, and (again) defendant's Social Security card and an uncashed check were found in the dresser in the first-floor bedroom. A Social Security card, like an uncashed check, is an item that a person would keep in a place he lived. See *People v. Piper*, 101 Ill. App. 3d 296, 300-01 (1981) (citing *United States v. Johnson*, 431 F.2d 441, 447 (5th Cir. 1970) (Godbold, J., dissenting)) (recognizing that a Social Security card and bank checks are types of items one keeps on one's person or in one's home). All of that said, even if this evidence did not

establish 922 Church Street as defendant's residence, it certainly established that defendant lived there at least periodically or, at a minimum, had control over the first-floor apartment. Because, at a minimum, the evidence indicated that defendant had control over the first-floor apartment, defendant was not prejudiced when Northrup, who also attested that defendant was frequently at 922 Church Street, was not called at trial.

¶ 37    In reaching this conclusion, we must comment on defendant's claim that the trial court stated that Northrup's testimony would have made a difference at trial. First, that is not exactly what the trial court said. The court stated that it wanted to hear from Northrup because it could make a difference to the jury "*if* she got up here and said he [(defendant)] *wasn't in that house,* he *had nothing to do with it*." (Emphases added.) Second, even assuming that the trial court's statement was more vague, as defendant suggests, the statement was made *before the trial court ruled* on the State's motion to dismiss. Obviously, given that the trial court granted the State's motion to dismiss, it *ultimately* did not believe that Northrup's testimony would have made a difference in the outcome of the trial, and we agree with that determination.

¶ 38    Because there is no reasonable probability that Northrup's testimony would have changed the outcome of the trial, we cannot conclude that trial counsel was ineffective for failing to call her to testify. See *Patterson*, 2014 IL 115102, ¶ 87. This is fatal to defendant's claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal. As defendant failed to make a substantial showing that trial counsel was ineffective, he cannot claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness. See *People v. Childress*, 191 Ill. 2d 168, 175, (2000) (unless there is merit to a defendant's claim that his trial counsel was ineffective, a defendant is not prejudiced when appellate counsel fails to raise trial counsel's ineffectiveness on direct appeal).

¶ 39          B. Unreasonable Assistance of Postconviction Counsel

¶ 40    We now consider whether postconviction counsel provided unreasonable assistance. Rule 651(c) standardizes what constitutes reasonable assistance from attorneys representing defendants at the second and third stages of postconviction proceedings. *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 51. It provides that, when a defendant appeals from an adverse decision in a postconviction petition, the record filed in the appellate court

> "shall contain a showing, which may be made by the certificate of [the defendant's] attorney, that the attorney has consulted with [the defendant] by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of [the defendant's] contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

When the record demonstrates that counsel did not comply with Rule 651(c), the trial court's decision will be automatically reversed and the cause remanded for compliance with the rule. *People v. Suarez*, 224 Ill. 2d 37, 51-52 (2007). That is, the defendant need not show prejudice from counsel's failure to comply with Rule 651(c). *Id.* We review *de novo* whether postconviction counsel provided reasonable assistance. *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 15.

¶ 41    Here, the record shows that postconviction counsel complied with Rule 651(c). Counsel's 651(c) certificate was attached to the amended postconviction petition that counsel prepared and filed. In the certificate, counsel indicated that he (1) consulted with defendant in person about defendant's claims of constitutional violations, (2) examined the report of proceedings from the trial, and (3) made any amendments to the petition that were necessary for an adequate presentation of defendant's contentions.

¶ 42    Although defendant acknowledges that postconviction counsel's certificate complied with Rule 651(c), defendant argues that "under the unique facts of this case, this Court should find that [postconviction] counsel nonetheless performed unreasonably where he failed to present Northrup in person at the hearing on the State's motion to dismiss where the court gave him the opportunity to do so." In making this argument, defendant observes that trial counsel may be ineffective for failing to subpoena witnesses. See, *e.g.*, *People v. Irvine*, 379 Ill. App. 3d 116, 130 (2008) ("Generally, an attorney cannot be found to have made decisions based on valid trial strategy where he or she fails to conduct a *reasonable* investigation, fails to interview witnesses, and fails to subpoena witnesses." (Emphasis in original.)); *People v. Makiel*, 358 Ill. App. 3d 102, 107 (2005) (same).

¶ 43    We cannot conclude that postconviction counsel provided unreasonable assistance for failing to subpoena Northrup. First, the cases defendant cites are inapplicable, as the issue there was *trial* counsel's, not *postconviction* counsel's, failure to subpoena witnesses. Second, even if postconviction counsel can be deemed to have provided unreasonable assistance by failing to take the extraordinary step to subpoena Northrup to testify at the hearing on the State's motion to dismiss—which the Act does *not* allow at the second stage (see *McGee*, 2021 IL App (2d) 190040, ¶ 29)—we question whether Northrup would have appeared in court. The record reveals that, before defendant's trial, several subpoenas were issued for Northrup's appearance. Most of those subpoenas were returned unserved because the sheriff could not locate her. The failure to locate Northrup continued during the trial, post-trial, and postconviction proceedings. Postconviction counsel repeatedly attempted to contact her but failed. Even when defendant became directly involved and attempted to find Northrup, he, too, was unsuccessful. Courts have held that trial counsel cannot be ineffective for failing to subpoena witnesses that cannot be found (see, *e.g.*,

*United States v. Vidales*, 143 F. Appx. 52, 53 (9th Cir. 2005) ("An attorney's failure to locate an exculpatory witness does not constitute ineffective assistance of counsel when evidence indicates the witness is in hiding."); *Humphrey v. McCotter*, 675 F. Supp. 1043, 1046-1047 (S.D. Tex. 1987), *rev'd on other grounds by Humphrey v. Lynaugh*, 861 F.2d 875 (5th Cir. 1988) ("[C]ounsel's failure to subpoena a witness he could not find and whose testimony could be suspect was not unreasonable."). Given the foregoing, we simply cannot conclude that postconviction counsel—whose performance is judged at a lower standard than that of trial or appellate counsel (see *People v. Custer*, 2019 IL 123339, ¶ 30)—provided unreasonable assistance when he did not subpoena Northrup to testify at the second-stage hearing on the State's motion to dismiss the amended petition.

¶ 44                                      III. CONCLUSON

¶ 45    For the above reasons, we affirm the judgment of the circuit court of Winnebago County.

¶ 46    Affirmed.