# Illinois Official Reports

## Appellate Court

***People v. McGee*, 2021 IL App (2d) 190040**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AARON A. McGEE, Defendant-Appellant. |
| District & No. | Second District<br>No. 2-19-0040 |
| Filed | June 22, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-CF-1358; the Hon. John A. Barsanti, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Jonathan Krieger, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Mary Beth Burns, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Justices Hudson and Brennan concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Aaron A. McGee, appeals the second-stage dismissal of his petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) seeking relief from his convictions, following a jury trial, of armed robbery with a dangerous weapon (720 ILCS 5/18-2(a)(1) (West 2010)) and armed robbery with a firearm (*id.* § 18-2(a)(2)). He contends that he made a substantial showing that his trial counsel provided ineffective assistance by unduly influencing him to reject a plea offer through the promise of an acquittal and by stipulating to the admissibility of a jail phone call involving defendant. We affirm in part, reverse in part, and remand for third-stage proceedings.

¶ 2                                          I. BACKGROUND

¶ 3    Defendant was charged with multiple counts, but before trial, all counts except for the armed robbery counts were dismissed. At trial, the victim, a cab driver, testified that, on May 8, 2011, at approximately 11 p.m., he was dispatched to pick up two passengers in Elgin. The two men directed his route as he drove but did not provide a destination address. Eventually, the men asked him to pull over near a house. One of the men exited the cab, approached the home, and knocked on the door. The other man remained in the cab. After knocking on the door, the first man returned to the cab and conversed with the other man through the back seat window. Several minutes later, the victim told the men that they had to pay their fare. The victim then felt something wet on the back of his head and smelled pepper spray. The victim grabbed his keys from the ignition and jumped out of the cab. One of the men then came up behind the victim, placed an object against his head, and demanded money. The man said that he had a gun and would shoot the victim. The victim ran away, turned around, and witnessed one of the men going through his cab and taking a bag that contained his insulin, wallet, mobile phone, and identification cards. The victim testified that he was shown a photo array five weeks after the incident but could not make an identification. He also stated that, due to the passage of time, he would be unable to make an in-court identification of the man who threatened to shoot him.

¶ 4    Frank Rosas testified that, on May 8, 2011, he and defendant made plans to rob a cab driver. Rosas testified about the crime and said that defendant displayed a gun during the robbery. However, Rosas did not know if it was real or fake. When the two arrived at their destination in the victim's cab, defendant left the taxi first and began pacing back and forth on the sidewalk. When the victim flashed a light at Rosas, he sprayed the victim with mace. Rosas then ran away, telling defendant that the plan had failed. Rosas did not look back to see what defendant did after that.

¶ 5    Elgin police detective Brian Gorcowski obtained a statement from defendant. Defendant stated that Rosas had previously told him that he wanted to rob someone, but defendant denied planning the robbery with Rosas. Defendant said that, when the taxi arrived at their destination with him and Rosas, Rosas said he did not have any money. Defendant was mad and suspected that Rosas might be thinking about committing a robbery. Defendant got out and knocked on some doors to avoid getting in trouble. He said that Rosas then sprayed mace on the victim and grabbed a bag from the cab. Defendant said that Rosas eventually gave him the bag, which he threw away. He offered to pay for the bag if he were charged with theft.

¶ 6    The State entered into evidence a recording of a phone call. The parties stipulated that (1) the phone call was between defendant (who was in jail) and another party, (2) the recording was made in the ordinary course of business, (3) the foundation for the admissibility of the recording was "complete," and (4) the recording was a true and accurate recording of the conversation.

¶ 7    After playing the recording, the trial court queried the jury, "Was everyone able to hear that? I couldn't hear a word that was said." A transcript of the recording was not prepared. At the end of its case in chief, the State claimed that the recording was fixed and played it again.

¶ 8    Portions of the recording are difficult to understand. However, during the brief phone call, defendant asks a person identified as "Antoine" for money, before Antoine asks defendant, "hey, you know Frank out, jo?" Defendant responded, "He out?" with a surprised inflection to his voice. Defendant then said, "I know he made a lockout statement. He gonna come to trial. They trying to buck me, jo." Antoine said that he had talked to Frank's wife who informed him of Frank's release, and defendant replied, "Go f*** with him, jo, beat his a***, jo. F*** him, jo. Look, don't even do s***, f*** him, jo. Just talk to him jo, tell him don't come to court and s***. Alright?" Antoine responded that he was not sure where Frank lived. Defendant repeated his request for money, and the call ended shortly after that.

¶ 9    The trial court denied defendant's motion for a directed verdict. Later, the bailiff informed the trial court that some of the jurors were not aware of who was talking on the tape. The trial court commented that "obviously one participant is *** defendant and then he makes a statement 'mom' and then a male voice comes on, and I think he refers to the male voice, but I could not understand a word that they said." The State responded that "[i]t's a male voice, and he says 'Antoine,' and I believe the stipulation [indicated] that it's a telephone call made by the defendant." Defense counsel commented that there would be a jury instruction and that addressing the issue before the proofs were closed was unnecessary. The trial court agreed and noted that, if the jury asked a question during deliberations, "we will gather together and prepare an answer for them." The trial court advised the jury to submit all questions to the court in writing.

¶ 10    During the jury-instruction conference, the trial court noted that the jury had submitted the following questions in writing: "Who was on the tape? Who called who? Could you reintroduce it? Can we hear it again?" The trial court commented to the parties:

> "Well, it was very, very hard to understand what they are saying. I could understand several words, but you didn't go with a transcript. So I would answer this question by sending it back to them with a recording and they can listen over and over and over and answer their own questions. It's in evidence. They have a right to consider it."

The trial court advised the parties that it would give the jury an answer after the jury had retired to deliberate. The State said that it would play the tape again in closing argument. Both parties then rested.

¶ 11    During closing argument, the State argued that the jail call showed consciousness of guilt because defendant was obviously afraid of Rosas's testimony. Defense counsel argued that the purpose of the call was not to threaten Rosas:

> "If you listen to it, listen to the intonation in [defendant's] voice when [Antoine] tells him [Rosas] is out of jail. He is surprised. He is surprised. And then he is mad because what he told [the police] is what he is thinking then. [Rosas] maced this guy, and he is

out of jail? Listen. He is surprised. So what comes after that? I submit to you—you just hear that somebody is out of jail, and you are still stuck, and he is the one who did it? It's anger. He didn't call to make a threat. It's a reaction. His statement is a reaction to hearing that [Rosas] got out, nothing more, no threat."

¶ 12 During deliberations, the jury asked the court to define reasonable doubt. The court responded that it was for the jury to decide. The jury found defendant guilty.

¶ 13 During posttrial proceedings, the court noted that defendant had sent the court a written statement that presented a potential *Krankel* issue. See *People v. Krankel*, 102 Ill. 2d 181 (1984). The actual written statement does not appear in the record, but the court quoted defendant: " 'My PD was supposed to get these X's dropped at first but she didn't do anything for me this whole time I been in jail, but give me my discovery, and that's it.' " The court asked defendant to elaborate, and defendant stated: "I just feel that [the] counts I got found guilty on, they didn't really have enough evidence on and I feel like they should have gotten dropped." The court then asked defendant if he believed that his counsel tried to get the charges dropped by going before a jury and presenting all the evidence. The court asked, "Do you think that she tried in that regard?" Defendant responded, "Yeah, at the end she did." He added, "At the end. I'm talking about way before." The court asked if there was anything else defendant felt that his counsel did not do for him, and he said, "Not really."

¶ 14 The trial court then asked defense counsel to address defendant's complaint that she should have persuaded the State to drop the Class X felonies. Counsel replied that there had been "protracted" plea negotiations with the State. She believed that at one point there was an offer for defendant to plead guilty to simple robbery but that "[it] did not take place." She said that the offer was presented to defendant and he rejected it. The court commented: "He [defendant] believed that the People did not have sufficient proof to convict him of armed robbery." Counsel replied: "I believe that that is [*sic*] his position at the time." The court found no evidence of neglect by counsel and that it was defendant's choice to reject the plea offer.

¶ 15 At sentencing, the armed robbery with a dangerous weapon conviction merged with the armed robbery with a firearm conviction, and the court imposed a term of 29 years' incarceration.

¶ 16 Defendant appealed. He argued, among other things, that the trial court erred in admitting the jail call recording because most of it was inaudible. We affirmed because counsel had stipulated to the recording's admissibility. *People v. McGee*, 2014 IL App (2d) 121303-U, ¶ 23. Defendant raised an issue of ineffective assistance of counsel related to jury instructions but did not allege ineffective assistance based on plea negotiations or the jail call recording.

¶ 17 In June 2016, defendant filed a *pro se* postconviction petition raising multiple claims of ineffective assistance of counsel. Only two of the claims are the subject of this appeal. First, defendant claimed that trial counsel was ineffective for advising him not to accept offers to plead guilty to robbery with a sentence of eight- or nine-years' incarceration. According to defendant, counsel "promised [him] that he would not be found guilty of the charges and that the State's case was not that strong." (Defendant also claimed that trial counsel misadvised him about the penalties he was facing if convicted, but defendant does not renew that claim on appeal.) Second, he contended that trial counsel was ineffective for stipulating to the admissibility of the recorded jail call and that appellate counsel was ineffective for not asserting that trial counsel was thereby ineffective.

- 4 -

¶ 18    Defendant attached an affidavit, in which he averred as follows. The State offered him a plea deal for nine years, but defense counsel said that she would not accept it. She believed that she would win at trial by proving that defendant did not have a gun. When defendant asked counsel how she would do that, she told him to let her " 'do the legal side of things.' " They always argued when she came to see him. The State next offered defendant an eight-year deal, but his counsel told him that it would be served at 85%. Defendant knew that was incorrect, but when he asked counsel about it, she yelled and told him that she knew the law better than him. Defendant averred: "I told her that I wanted to take the 8 or 9 year plea offer. My attorney then told me that she promesses [*sic*] me that she will beat this case at trial."

¶ 19    Defendant further averred as follows. Every time he said that he wanted to take the deal offered, counsel told him that he was crazy and repeated that she would win the case. He felt that counsel, as a form of retaliation, sought a mental health evaluation for him. Defendant had wanted a new attorney and told the court about the problems he was having with counsel, but the court said it could not help him. Defendant asserted:

> "I then felt that since I was stuck with this attorney and she promessed [*sic*] me she will win at trial, I just wanted to get the trial over with and said okay. But I never really wanted to go to trial because I was scared I would lose, and the offer was not that bad."

¶ 20    Defendant acknowledged in his affidavit that the recording played in court was "a recording of a phone call of [him] at the county jail." When he found out about the recording, he asked counsel how she would take care of the problem. Counsel told him "that the tape is very hard to understand, and it's [her] hope the jury will not be able to understand it also."

¶ 21    In support of his ineffectiveness claim, defendant attached several transcripts of the proceedings to his petition. These transcripts reflect as follows. When trial counsel sought a fitness evaluation, defendant told the court that he and counsel were "not seeing eye to eye." Defendant noted that he had previously asked for new counsel. He also remarked that "[t]here's an argument every time [counsel] comes to see me" and that "[s]he's telling me false information, and then when I ask her about it, then there is an argument, so that's why she's trying to set it for some psych or something." On another occasion, defendant repeated his concerns about a fitness evaluation and said he wanted to set his case for trial. On yet another occasion, defendant again told the court that there was a conflict between himself and counsel. The court told defendant, "Well, just because you don't like what she's saying or you don't get along with her doesn't mean it is a conflict." The court told defendant that he should write and file a motion if he had an issue with his counsel.

¶ 22    The trial court moved the petition to second-stage proceedings and appointed counsel. Counsel amended the petition, retaining the issues concerning plea bargaining and the stipulation (including the allegation that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for stipulating).

¶ 23    The State moved to dismiss the amended petition. First, as to the claim that trial counsel unduly influenced defendant to reject the State's plea offers, the State argued that (1) the claim lacked adequate support because counsel did not provide defendant's written statement that prompted the *Krankel* inquiry and (2) defendant's failure at the *Krankel* inquiry to voice his concerns about trial counsel's undue influence in the plea-bargaining process affirmatively rebutted his claim.

¶ 24    Second, the State argued that defendant's claim regarding the stipulation to the admissibility of the recorded jail call was barred under the doctrine of *res judicata* because it

could have been raised on direct appeal but was not (here the State overlooked that defendant had claimed that appellate counsel was ineffective for not alleging that trial counsel was ineffective regarding the stipulation). The State also argued that the issue was a matter of trial strategy and that there was no basis for contesting the foundation for the admission of the recording.

¶ 25 The trial court granted the motion to dismiss. The court rejected defendant's claim that trial counsel exerted improper influence in the plea-bargaining process. The court's reason was that defendant failed to inform the court of that particular concern during the *Krankel* inquiry. The court also found that the stipulation did not constitute ineffective assistance of counsel because defendant could only speculate as to the prejudicial impact of the stipulation. Defendant appeals.

¶ 26                                                   II. ANALYSIS

¶ 27 On appeal, defendant claims that the trial court erred in dismissing his claims that trial counsel was ineffective for (1) improperly influencing him to reject the State's plea offers and (2) stipulating to the admissibility of the recording of the jail call.

¶ 28 The Act provides a three-stage mechanism for a defendant to advance a claim of a substantial deprivation of constitutional rights. *People v. Barcik*, 365 Ill. App. 3d 183, 190 (2006). At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016). At this stage, the petition needs to present only a limited amount of detail to set forth the gist of a meritorious constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). If the trial court does not dismiss the petition as frivolous or patently without merit, the petition advances to second-stage proceedings. *People v. Lesley*, 2018 IL 122100, ¶ 31.

¶ 29 At the second stage of postconviction proceedings, the trial court shall appoint counsel for an indigent defendant. 725 ILCS 5/122-4 (West 2016). The State may file a motion to dismiss or an answer. *Id.* § 122-5. "If the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage." *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009). To survive dismissal, the petition must make a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. The trial court is precluded from engaging in any fact-finding or credibility determinations at this stage because "[a]ll well-pleaded factual allegations not positively rebutted by the trial record must be taken as true for purposes of the State's motion to dismiss." *People v. Sanders*, 2016 IL 118123, ¶ 42. "The Act contemplates that such determinations will be made at the evidentiary stage, not the dismissal stage, of the litigation." *People v. Dupree*, 2018 IL 122307, ¶ 29. "Thus, the substantial showing of a constitutional violation that must be made at the second stage is 'a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief.' " *Id.* (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35). "Where, as here, the circuit court dismisses a defendant's postconviction petition at the second stage after finding no substantial showing of a constitutional deprivation has been made, review of the dismissal is *de novo*." *Id.*

¶ 30 To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test from *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, "a defendant must prove that defense counsel's performance fell below an objective standard of

reasonableness and that this substandard performance created a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *People v. Graham*, 206 Ill. 2d 465, 476 (2003). To review the second-stage dismissal of a petition alleging a *Strickland* violation, we determine whether defendant made a substantial showing under the two-pronged ineffectiveness test. *People v. Alberts*, 383 Ill. App. 3d 374, 377-78 (2008).

¶ 31 First, we address defendant's contention that the trial court erred in rejecting his claim that trial counsel improperly influenced him to reject the State's plea offers by promising him an acquittal at trial. The trial court rejected this claim specifically because defendant, at the *Krankel* inquiry, had raised other concerns about trial counsel's performance but did not mention that he had rejected plea offers because of counsel's promise of an acquittal.

¶ 32 "[A] criminal defendant personally possesses a constitutional right to elect what plea to enter." *People v. Williams*, 2016 IL App (4th) 140502, ¶ 33. " 'A criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer.' (Emphasis in original.)" *People v. Hale*, 2013 IL 113140, ¶ 16 (quoting *People v. Curry*, 178 Ill. 2d 509, 528 (1997)). "This right to effective assistance of counsel extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial." *Id.* To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* ¶ 18. "In other words, the defendant must establish that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer." *Id.*

¶ 33 The supreme court in *Hale* looked to *Missouri v. Frye*, 566 U.S. 134 (2012), for the specific requirements of showing prejudice. Those requirements are as follows:

> "[T]o prevail on a claim that a trial attorney's given deficient performance denied a defendant his constitutional right to the effective assistance of counsel during guilty-plea negotiations with the State, a defendant must also demonstrate that (1) a reasonable probability existed that the defendant would have accepted the guilty-plea offer absent counsel's deficient performance and (2) the guilty-plea offer would have been entered without the prosecution rescinding the offer or the court's refusing to accept the parties' agreement." *Williams*, 2016 IL App (4th) 140502, ¶ 29 (citing *Hale*, 2013 IL 113140, ¶ 19, citing *Frye*, 566 U.S. at 147).

A defendant's self-serving claims are not adequate; there must be independent, objective confirmation that the plea offer was rejected based on counsel's erroneous advice and not on other considerations. *Hale*, 2013 IL 113140, ¶ 18. A defendant can show objective confirmation through evidence that, after trial and conviction, he or she received a substantially harsher sentence than had been offered. *Id.*

¶ 34 *Hale* was an appeal from a third-stage evidentiary hearing, not from a second-stage dismissal where the sufficiency of the allegations was at issue. The Fourth District has noted that "postconviction challenges based on a claim that the defendant was denied his constitutional right to the effective assistance of counsel during guilty-plea negotiations with the State are almost always based on matters that occur *de hors* the record." *Williams*, 2016 IL App (4th) 140502, ¶ 44. When a petitioner bases a claim on matters outside the record, it is not the Act's intent that the court adjudicate such a claim on the pleadings. *People v. Simms*, 192 Ill. 2d 348, 360 (2000); *Williams*, 2016 IL App (4th) 140502, ¶ 42.

¶ 35    The petition's allegations, defendant's affidavit, and the record as developed thus far make a substantial showing of a constitutional violation. Defendant averred that the State made two plea offers, each for substantially less prison time than defendant ultimately received. Defendant further averred that his counsel, through the promise of an acquittal, persuaded him to reject both plea offers. Defense counsel recalled at the *Krankel* inquiry that there were "protracted" plea negotiations and that an offer was made for defendant to plead to simple robbery. Counsel stated that "[it] did not take place." She clarified that she presented the offer to defendant and he rejected it. If, as defendant avers, the State made two offers, then the State evidently was interested in reaching a plea deal and likely would not have rescinded the offer. Moreover, there is no indication that the court would have rejected either offer.

¶ 36    In any event, the State does not dispute that defendant's petition and affidavit make a substantial showing that counsel provided ineffective assistance in the plea bargaining. Instead, the State argues (1) the record affirmatively rebuts defendant's ineffectiveness claim and (2) the claim lacks proper support because defendant did not furnish the written statement that prompted the *Krankel* inquiry.[1] We reject both points.

¶ 37    As for the written statement, it indeed does not appear in the record, but the trial court stated the substance of it and even quoted it on the record. Defendant's affidavit fulfills the Act's requirement of evidentiary support. See 725 ILCS 5/122-2 (West 2016). Thus, the State's argument on this point lacks merit. The meaningful issue is whether the record positively rebutted defendant's allegations.

¶ 38    To determine whether averments are positively rebutted by the record, the inquiry is whether it is clear from the trial record that no fact finder could ever accept the truth of the averments. See *People v. Robinson*, 2020 IL 123849, ¶ 60; *People v. Simms*, 2021 IL App (1st) 161067-B, ¶ 28. Contradictions between the defendant's averments and the trial evidence are not enough because recognizing the existence of a conflict with the trial evidence is not the same as finding that the averments are positively rebutted. See *Simms*, 2021 IL App (1st) 161067-B, ¶ 35 (citing *Robinson*, 2020 IL 123849, ¶ 60).

¶ 39    Here, the trial court's only determination concerning the plea offers was that defendant failed to claim at the *Krankel* inquiry that counsel improperly influenced him to reject the offers. The State argues that defendant's claim is positively rebutted by (1) the trial court's and trial counsel's statements at the *Krankel* inquiry and (2) defendant's failure to express at the *Krankel* inquiry his concerns about counsel's influence in plea bargaining. We disagree.

¶ 40    As to the State's first point, trial counsel's remark at the *Krankel* inquiry that defendant rejected the plea offer does not positively rebut defendant's averment as to *why* he rejected the plea offer, namely because of counsel's promise of an acquittal. Counsel's statement at best permits an inference that contradicts defendant's averment. Further, the trial court's comment that defendant "believed that the People did not have sufficient proof to convict him of armed robbery" is consistent with defendant's affidavit. Defendant could have come to that belief based on counsel's insistence that the State's case was so weak that defendant could with confidence proceed to trial.

---

[1]The State also argues that the trial court's admonitions cured any improper advice by counsel as to the potential sentences defendant faced if convicted. Defendant's petition indeed did include an allegation that counsel misadvised defendant in that respect, but defendant has not raised the issue on appeal. Accordingly, we do not address the State's point.

¶ 41    As to the State's second point, we note that the trial court did not specifically address whether the record positively rebutted defendant's claim of ineffectiveness based on trial counsel's promise of an acquittal. Instead, the court dismissed the claim on an apparent forfeiture theory, reasoning that, when the court asked defendant at the *Krankel* inquiry if there was anything else defendant felt that his counsel did not do for him, defendant answered, "Not really," rather than express concern about counsel's promise of an acquittal. Notably, the State does not defend the trial court's finding of forfeiture but takes the different tack of arguing that defendant's failure to mention counsel's promise positively rebuts his claim. The State's position lacks merit. When the court asked defendant if he had any further concerns, defendant had already raised concern about counsel's efficacy in plea bargaining. Defendant might have reasonably construed the court as asking if he had concerns in *other* areas of counsel's performance. Therefore, defendant's answer, "Not really," is not conclusive on whether defendant believed counsel misled him with a promise of acquittal. Rather, the issue is defendant's omission of details when he raised the matter of plea bargaining. An omission or absence of an assertion at trial is not a positive rebuttal of an averment in a postconviction proceeding. Defendant's failure to elaborate further about the issue at the *Krankel* inquiry was not an affirmative rebuttal of the factual assertions in his affidavit. See *People v. Landa*, 2020 IL App (1st) 170851, ¶ 67 (postconviction averments supporting an alibi defense were not positively rebutted by the defendant's election not to testify at trial or by his mother's failure to mention an alibi when she spoke in favor of the defendant at sentencing). We also disagree that a defendant forfeits issues not raised at a *Krankel* inquiry.

¶ 42    For the foregoing reasons, we hold that the trial court wrongly dismissed defendant's claim that his trial counsel was ineffective for influencing him, with a promise of acquittal, to reject plea offers. We remand for a third-stage evidentiary hearing on this issue.

¶ 43    Defendant next argues that the trial court erred when it determined that counsel was not ineffective for stipulating to the admissibility of the jail call recording.

¶ 44    "It is unequivocal that the use of stipulations, in and of itself, does not establish ineffective assistance of counsel." *People v. Coleman*, 301 Ill. App. 3d 37, 46 (1998). "Moreover, choices that are made on the basis of strategic considerations after a thorough investigation of all matters relevant to plausible options have traditionally been considered to be unchallengeable." *Id.* at 47 (citing *Strickland*, 466 U.S. at 690). "Accordingly, a claim of incompetency arising from a matter of trial strategy generally will not support a claim of ineffective representation." *Id.* (citing *People v. Whittaker*, 199 Ill. App. 3d 621, 629 (1990)). However, an untrue stipulation or one entered erroneously may amount to deficient representation. See *id.*

¶ 45    Here, defendant argues that no reasonable strategy supported the stipulation and that counsel's stipulation prevented her from arguing that defendant was not one of the people speaking on the recording. But defendant did not provide support with his petition to show that he was not one of the parties on the recording. Indeed, he admitted in his affidavit that the recording was "of [him] at the county jail." He also did not make a showing that the State could not have provided foundation to admit the recording. Instead, in his petition, defendant merely speculated that there "may have not been proper foundation." Further, counsel could have strategized that the process of laying foundation would unduly draw more attention to the recording or give the impression that it was particularly important. Moreover, as the court, defendant, and his counsel noted, and as questions from the jury reflect, the recording is difficult to understand, making it reasonable for counsel to strategize that the jury would give

it very little weight. Thus, defendant's petition failed to make a substantial showing of ineffective assistance of counsel regarding the stipulation, and we affirm on this issue.

¶ 46                                    III. CONCLUSION

¶ 47        For the reasons stated, we affirm in part and reverse in part the judgment of the circuit court of Kane County and remand the cause for further postconviction proceedings.

¶ 48        Affirmed in part and reversed in part; cause remanded.