2021 IL App (2d) 190873-U
No. 2-19-0873
Order filed December 21, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06-CF-1897 |
| KERRY L. CAGE, | ) ) | Honorable Sandra T. Parga, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's postconviction petition made a substantial showing that he was denied the effective assistance of counsel because his trial attorney failed to (1) convey a favorable plea offer before it expired and (2) investigate a witness who claimed that the victim admitted that she falsely accused the defendant of sexual assault.

¶ 2    Defendant, Kerry L. Cage, appeals from an order of the circuit court of Kane County granting the State's motion to dismiss his amended petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). We reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4    Following a bench trial, defendant was convicted of three counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2006)) and a single count each of robbery (720 ILCS 5/18-1(a) (West 2006)) and obstructing justice (720 ILCS 5/31-4(a) (West 2006)). Defendant was sentenced to consecutive prison terms totaling 34 years.

¶ 5    At trial, V.L. testified that, on July 22, 2006, at about 12:30 p.m., defendant approached her in a Walmart in Aurora. She was there with her new boyfriend, Brandon Durham, and her two daughters. Defendant and V.L. had a prior romantic relationship. Defendant took V.L. by the arm and pulled her out of the store. Once they were in the parking lot, he grabbed her belt. He spoke to her in a stern voice. A security guard approached them. Defendant told the security guard that he caught V.L., whom he described as his "wife," with "another man." Defendant assured the guard that "everything was going to be fine," and the guard left. Defendant, V.L., her daughters, and Durham then walked to a restaurant.

¶ 6    At the restaurant, defendant and V.L. were approached by a police officer who said that there had been a report of a disturbance. Defendant gave the officer a false name. The group then left the restaurant. Durham decided to leave, and defendant flagged down a car. Defendant, V.L., and her daughters got into the car. V.L. testified that she asked the driver to take her to another store. When they arrived at the store, defendant physically prevented her from exiting the car and told the driver to take them to a nearby park. When they arrived at the park, defendant pushed V.L. and her daughters out of the car and then got out himself.

¶ 7    The driver of the car testified that defendant screamed at V.L. when she attempted to exit the car before it arrived at the park. A passenger in the car testified that, when V.L. attempted to exit the car early, defendant became angry and physically restrained her.

¶ 8    V.L. testified that, at the park, defendant struck her in the face with a closed fist. V.L.'s lip began to bleed. Defendant got a towel from a fisherman to help stop the bleeding. Defendant became angry and accused V.L. of infidelity. He also pulled out some of her hair and took money from her purse. Defendant told the children to play. He then told V.L. that he needed to check whether she was having sex with someone else. He put his finger in her vagina and stated that she was having sex with another man. Defendant had V.L. perform oral sex on him and they then engaged in sexual intercourse. Defendant ejaculated. Defendant had a friend drive V.L. and the children back to the Walmart.

¶ 9    V.L. went to the hospital, where she reported to a nurse and Detective Todd Fancsali that defendant sexually assaulted her. A nurse administered a sexual assault kit.

¶ 10    On cross-examination, V.L. acknowledged that, on October 16, 2016, she sent a letter to the trial court indicating that she did not recall the events of July 22, 2006, and did not believe that she had been sexually assaulted or that defendant had injured her. On redirect, she testified that the letter was untrue. She had written it at the behest of defendant's family members.

¶ 11    Detective Fancsali testified that he spoke with defendant on July 25, 2006. Defendant initially told Fancsali that he was not in Aurora during the week of July 22, 2006, but he later told Fancsali that he went to the Walmart in Aurora with V.L. and her children on July 22, 2016. Fancsali collected a buccal swab from defendant. It was stipulated that DNA found on the buccal swab matched, to a reasonable degree of scientific certainty, DNA found on V.L.'s vaginal swab.

¶ 12    In his testimony, defendant claimed that he had consensual sexual intercourse with V.L. on the morning of July 22, 2006. They went to a park later that day, but he did not have sexual intercourse with her there. He admitted striking V.L. and giving a false name to the police. However, he denied pulling V.L.'s hair or sexually assaulting her.

¶ 13    As noted, the trial court found defendant guilty of multiple counts of aggravated sexual assault and one count each of robbery and obstructing justice. Defendant filed a posttrial motion, which, as supplemented, claimed that there was new exculpatory evidence. At the hearing on the motion, defendant presented the testimony of the fisherman who provided defendant with a towel. He testified that he kept an eye on the defendant and V.L. because he was worried about V.L.'s safety. He did not observe any sexual activity between defendant and V.L. On cross-examination, he admitted that, after the incident, he became acquainted with defendant when they were incarcerated together. He acknowledged having numerous criminal convictions.

¶ 14    V.L. acknowledged, as at trial, that she had written a letter to the trial court before trial recanting her accusations against defendant. She also prepared a posttrial affidavit indicating that she gave false testimony. On cross-examination, she testified that she did not want defendant to perform the sexual acts on her at the park on July 22, 2016, but she admitted that she did not tell him so at the time.

¶ 15    The trial court denied the motion, and defendant appealed. We affirmed. *People v. Cage*, No. 2-08-1057 (2010) (unpublished order under Illinois Supreme Court Rule 23)

¶ 16    Defendant filed a *pro se* petition for relief under the Act. The trial court summarily dismissed the petition, but we reversed and remanded for second-stage proceedings on the petition. *People v. Cage*, 2013 IL App (2d) 111264. On remand, defendant retained a private attorney who filed an amended petition. The amended petition claimed, *inter alia*, that trial counsel rendered ineffective assistance by failing to convey to defendant a plea offer from the State before the offer expired. Under the offer, defendant would plead guilty to aggravated domestic battery and be sentenced to an 11-year prison term for which he would be eligible for day-for-day good conduct credit. Also, defendant would not be required to register as a sex offender. Defendant alleged that

he only learned of the offer after it had expired. Attached to the petition as an exhibit was a letter from the prosecutor dated April 26, 2007, setting forth the terms of the offer. The letter stated that the offer would be open until May 4, 2007.

¶ 17    Defendant submitted an affidavit in which he stated that he had informed one of his attorneys that he "would be willing to plead guilty to aggravated battery and the time didn't matter as long as it was 50%." Defendant's new attorney, Eric Mitchell, visited defendant only once in the jail and brought papers for defendant to sign. Defendant was surprised that "one of the papers was the plea deal I had asked for which had expired for some time."

¶ 18    The petition also alleged that counsel rendered ineffective assistance by failing to investigate a possible witness, Sandra Pizarro. The petition included an affidavit from Pizarro stating that she had a conversation with V.L. in which V.L. denied that defendant sexually assaulted her. V.L. said that she accused him because she knew it would "get [defendant] locked up for a long time." Pizarro stated, "I called and spoke to [defendant's] lawyer and told him what [V.L.] told me. I gave the lawyers my two numbers and my husband's number [and he said] he would send someone out to talk to me. I've never heard from him again."

¶ 19    The State moved to dismiss the petition. The trial court granted the motion and this appeal followed.

¶ 20                                II. ANALYSIS

¶ 21    The Act creates a three-stage procedure for evaluating a criminal defendant's claim of a substantial deprivation of constitutional rights. *People v. McGee*, 2021 IL App (2d) 190040, ¶ 28. At the first stage, the trial court independently reviews the petition within 90 days of its filing and determines whether it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020). At the first stage, "the petition needs to present only a limited amount of detail to set forth

the gist of a meritorious constitutional claim." *McGee*, 2021 IL App (2d) 190040, ¶ 28. If the petition is not dismissed as frivolous or patently without merit, it advances to second-stage proceedings. *Id.*

¶ 22    At the second stage, the trial court appoints counsel for an indigent defendant. Counsel may amend the petition, and the State may either move to dismiss or file an answer. To survive dismissal, the petition must make a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). The trial court may not engage in any fact-finding or credibility determinations at this stage because "[a]ll well-pleaded factual allegations not positively rebutted by the trial record must be taken as true for purposes of the State's motion to dismiss." *People v. Sanders*, 2016 IL 118123, ¶ 42. "The Act contemplates that such determinations will be made at the evidentiary stage, not the dismissal stage, of the litigation." *People v. Dupree*, 2018 IL 122307, ¶ 29. "Thus, the substantial showing of a constitutional violation that must be made at the second stage is 'a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief.' " *Id.* (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35). The second-stage dismissal of a postconviction petition is subject to *de novo* review. *Id.*

¶ 23    Defendant argues that the trial court erred in dismissing his claim that counsel rendered ineffective assistance by failing to convey a plea offer from the State before it expired. To succeed on a claim of ineffective assistance of counsel, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.' " *People v. Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

¶ 24    It is well established that "defense counsel has a duty to communicate to the defendant 'formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.' " *People v. Ryburn*, 2019 IL App (4th) 170779, ¶ 41 (quoting *Missouri v. Frye*, 566 U.S. 134, 145 (2012)). Counsel's failure to convey a plea offer before it expired constitutes deficient performance under *Strickland*. *Id.*

¶ 25    In dismissing defendant's claim based on counsel's failure to convey the plea offer, the trial court noted that, on the day of trial, defendant's attorney, Eric Mitchell, stated that he had just received "another offer." Defendant addressed the court as follows: "Since all of this stuff's been taking place, I haven't spoke to Mr [*sic*] Mitchell but one time. He brought me an offer telling me [the] State wanted me to take 11 years." Defendant complained that Mitchell refused to subpoena witnesses and had never talked with him about the case. According to defendant, another attorney from Mitchell's firm visited him, saying that Mitchell "wanted him to sell [defendant] out." The attorney said he would not do so. The next day, defendant saw Mitchell in court. According to defendant, Mitchell said, "you got a thousand witnesses against you, so on and so forth, I think you should take this amount of time." The trial court reasoned that the latter statement implied that the 11-year offer was still open when defendant learned of it.

¶ 26    The State's position on appeal, as we understand it, is that defendant's remarks to the trial court on the day of trial rebut his claim that he was unaware of the 11-year offer until it expired. We disagree. It is not at all clear that, when Mitchell purportedly told defendant that he "should take this amount of time," he was referring to the offer in the April 26, 2007, letter from the prosecutor.

¶ 27    We have recently explained:

> "To determine whether averments are positively rebutted by the record, the inquiry is whether it is clear from the trial record that no factfinder could ever accept the truth of the averments. [Citations.] Contradictions between the defendant's averments and the trial evidence are not enough, because recognizing the existence of a conflict with the trial evidence is not the same as finding that the averments are positively rebutted. [Citation.]" *McGee*, 2021 IL App (2d) 190040, ¶ 38.

We cannot say that it is clear from the record that no factfinder could ever accept the truth of defendant's allegation that he learned of the State's 11-year offer only after it expired. Accordingly, defendant has made a substantial showing that counsel performed deficiently by failing to communicate the State's offer to him.

¶ 28    We turn now to *Strickland*'s prejudice prong. To establish that counsel's failure to convey a plea offer is prejudicial, the defendant must show that (1) a reasonable probability existed that the defendant would have accepted the offer absent counsel's deficient performance and (2) the offer would have been entered without the prosecution rescinding the offer or the court's refusing to accept the parties' agreement. *People v. Williams*, 2016 IL App (4th) 140502, ¶ 29. The defendant must also show that "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147.

¶ 29    A defendant's allegation that he would have accepted a favorable plea offer can be a sufficient second-stage showing of a reasonable probability that the defendant would have accepted the offer. See *People v. Ryburn*, 2019 IL App (4th) 170779, ¶ 42; *cf. McGee*, 2021 IL App (2d) 190040, ¶ 35 (allegation that counsel, through promise of acquittal, persuaded defendant to reject favorable plea offers was sufficient at second stage of postconviction proceedings.) We

acknowledge that *McGee* cited *People v. Hale*, 2013 IL 113140, ¶ 18 for the proposition that "[a] defendant's self-serving claims are not adequate; there must be independent, objective confirmation that the plea offer was rejected based on counsel's erroneous advice and not on other considerations." *McGee*, 2021 IL App (2d) 190040, ¶ 33 (citing *Hale*, 2013 IL 113140, ¶ 18). As *McGee* further observed, however, *Hale* was an appeal following an evidentiary hearing (*id.* ¶ 34), so it does not speak to the question of what constitutes a substantial showing at the second stage of a postconviction proceeding.

¶ 30    As in the *McGee* allegations, defendant's allegation here—that "[w]ithout question, [defendant] would have accepted the offer, if he were made aware of it"—was sufficient to survive second-stage dismissal. The trial court noted that, at points in the proceedings, defendant was eager to proceed to trial. The trial court viewed this as rebutting defendant's allegation that he would have accepted a plea offer. However, we cannot say that "no factfinder could ever accept the truth" (*McGee*, 2021 IL App (2d) 190040, ¶ 38) of the allegation that defendant would have accepted the offer.

¶ 31    As discussed, a defendant must also establish that the State would not have rescinded the offer and that the trial court would have approved the plea bargain. There is nothing in the record to suggest that the State would have rescinded the offer before its scheduled expiration date. Factors relevant to assessing whether the trial court would have approved a plea agreement include conservation of judicial resources, sparing victims from having to testify, and the defendant's criminal history. See *Ryburn*, 2019 IL App (4th) 170779, ¶ 42. Although the record reflects that defendant had an extensive criminal history, we believe that there is at least a reasonable probability that the trial court would have approved the 11-year offer to conserve judicial resources and to spare V.L. and her children from having to testify.

¶ 32    Finally, defendant has shown that "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147. By proceeding to trial, defendant received an aggregate sentence of 34 years. Had he accepted the State's offer, he would have been sentenced to 11 years to be served at 50%. We therefore conclude that the trial court erred by dismissing his claim of ineffective assistance of counsel based on counsel's failure to communicate the plea offer before it expired.

¶ 33    We next consider whether the defendant made a substantial showing that counsel was ineffective because he failed to investigate Sandra Pizarro as a possible witness. As noted, defendant alleged that Pizarro could have testified that V.L. admitted that her claims of sexual assault were false.

¶ 34    The following principles apply:

> "Defendant has the burden of overcoming the presumption that a decision to not call a witness is within the realm of trial strategy. [Citation.] Choices which are made on the basis of strategic considerations after a thorough investigation of all matters relevant to plausible options have traditionally been considered to be unchallengeable. [Citation.] A claim of incompetency arising from a matter of trial strategy will generally not support a claim of ineffective representation. [Citation.] *People v. Whittaker*, 199 Ill. App. 3d 621, 628-29 (1990).

However, "[a]n attorney who fails to conduct reasonable investigation, fails to interview witnesses, and fails to subpoena witnesses cannot be found to have made decisions based on valid trial strategy." *People v. Makiel*, 358 Ill. App. 3d 102, 107 (2005). Here, the record does not reveal whether defendant's attorney's telephone conversation with Pizarro was a reasonable investigation

under the circumstances. Accordingly, defendant has made a substantial showing of deficient performance.

¶ 35    Concerning *Strickland's* prejudice prong, defendant has made a substantial showing that Pizarro's testimony could have altered the outcome of the trial by severely undermining the credibility of the V.L.'s testimony that she was sexually assaulted. The State argues by analogy to our decision on direct appeal in which we held that the failure to call certain witnesses was not ineffective assistance of counsel. *People v. Cage*, No. 2-08-1057 (2010) (unpublished order under Illinois Supreme Court Rule 23) (*Cage I*). The argument is improper under Illinois Supreme Court Rule 23(e)(1) (eff. Jan. 1, 2021) which provides:

> "An order entered under subpart (b) or (c) of this rule is not precedential except to support contentions of double jeopardy, *res judicata*, collateral estoppel, or law of the case. However, a nonprecedential order entered under subpart (b) of this rule on or after January 1, 2021, may be cited for persuasive purposes."

The State's attempt to draw an analogy to a different issue raised in *Cage I* is not a permissible purpose for which *Cage I* may be cited. Accordingly, we refuse to consider the argument.

¶ 36                                III. CONCLUSION

¶ 37    For the reasons stated, we reverse the judgment of the circuit court of Kane County and remand for a third-stage evidentiary hearing on defendant's claims of ineffective assistance of counsel arising from the failure to convey a plea offer before it expired and the failure to investigate Pizarro as a witness.

¶ 38    Reversed and remanded.