2024 IL App (2d) 230164-U
No. 2-23-0164
Order filed September 25, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06-CF-1897 |
| KERRY L. CAGE, | ) ) ) | Honorable Sandra T. Parga, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: Postconviction claims of ineffective assistance of counsel were properly denied after an evidentiary hearing at which defendant failed to prove that trial counsel (1) neglected to share a plea offer with defendant before it expired or (2) was informed about a potential witness who could provide exculpatory testimony.

¶ 2    Defendant, Kerry L. Cage, appeals from the denial, following an evidentiary hearing, of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)) from his convictions of three counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2006)) and a single count each of robbery (*id.* § 18-1(a)) and obstructing justice (*id.* § 31-4(a)). We affirm.

¶ 3                                      I. BACKGROUND

¶ 4     In September 2006, defendant was indicted with numerous offenses. He was represented successively by two attorneys from the same private law firm. One of the attorneys represented defendant during the bulk of the pretrial proceedings, and the other attorney represented defendant for the remaining pretrial proceedings and at trial. We refer to them collectively as "defense counsel" and separately as "pretrial counsel" and "trial counsel."

¶ 5     In December 2006, pretrial counsel filed a motion on behalf of his firm for leave to withdraw because defendant could not pay for his legal representation and serious disputes had arisen between defendant and his attorneys regarding his representation. The trial court denied the motion. At a status hearing on April 13, 2007, trial counsel informed the court that pretrial counsel had resigned from the firm and that trial counsel would be taking over the case.

¶ 6     Defendant's two-day bench trial commenced on June 18, 2007. When the trial court asked trial counsel if he was ready for trial, counsel replied, "Your Honor, I am still conversing with my client about different options. I have just received another offer just a second ago. I am still asking to see if this case can be resolved." The court passed the case. When the case was recalled, trial counsel stated that defendant wanted a continuance. When the court asked defendant why he wanted a continuance, defendant said, "Since all of this stuff's been taking place, I haven't spoke [*sic*] with [trial counsel] but one time. He brought me an offer telling me [the] State wanted me to take 11 years." Defendant remarked that he was "shock[ed]" the day he learned that trial counsel had taken over the case from pretrial counsel:

> "[Trial counsel] never came to the back and said [pretrial counsel] is not on your case
> anymore. [Trial counsel] wouldn't tell me anything[.] I step out, see him sitting here, says,

and let me just tell you this, you got a thousand witnesses against you, so on and so forth,

I think you should take this amount of time."

After further discussion, the court denied defendant's request for a continuance.

¶ 7    The State's principal witness was the alleged victim, V.L. She testified that she and her daughters encountered defendant, a former boyfriend, on July 22, 2006. Defendant flagged down a car and offered the driver $20 for a ride. The driver agreed and drove V.L., her daughters, and defendant to a store that V.L. wanted to visit. When they arrived at the store, defendant would not let V.L. out of the car. Defendant instructed the driver to take the group to a nearby park. When they arrived at the park, defendant struck V.L. in the face with a closed fist. He also pulled out some of her hair and took money from her purse. Defendant placed his finger in V.L.'s vagina, had her perform oral sex on him, and engaged in sexual intercourse with her. V.L. later went to a hospital, where she reported that defendant had sexually assaulted her.

¶ 8    On cross-examination, V.L. admitted that she had written a letter to the trial court indicating that she did not recall the events of July 22, 2006, and did not believe that she had been sexually assaulted. V.L. testified that the letter was untrue; she had written it at the behest of members of defendant's family. Defendant testified that he had consensual sexual intercourse with V.L. on the morning of July 22, 2006, but not at a park. He admitted striking her but denied sexually assaulting her.

¶ 9    After defendant was convicted, trial counsel was permitted to withdraw because defendant had filed a complaint against him with the Illinois Attorney Registration and Disciplinary Commission. New counsel was appointed to assist defendant in connection with his posttrial motion. After denying the posttrial motion, the trial court sentenced defendant to consecutive prison terms totaling 34 years. He appealed, and we affirmed his convictions. *People v. Cage*,

No. 2-08-1057 (2010) (unpublished order under Illinois Supreme Court Rule 23). In July 2011, defendant filed a *pro se* postconviction petition. The trial court summarily dismissed the petition, but we reversed and remanded for further proceedings. *People v. Cage*, 2013 IL App (2d) 111264.

¶ 10    On remand, the trial court appointed counsel for defendant. Counsel filed an amended petition claiming, *inter alia*, that defendant received ineffective assistance from defense counsel. The amended petition alleged that the State extended a plea offer to defendant under which he would receive an 11-year prison sentence in exchange for pleading guilty to aggravated domestic battery. According to the amended petition, defense counsel did not convey the offer to defendant until after it had expired. Attached to the amended petition was a letter from the prosecutor dated April 26, 2007, outlining the terms of the plea offer. The letter indicated that the offer would remain open until May 4, 2007.

¶ 11    The amended petition also raised a claim of ineffective assistance of counsel based on defense counsel's alleged failure to investigate a potential witness, Sandra Pizarro. In an affidavit executed in October 2017, which accompanied the amended petition, Pizarro averred that her husband (who was a good friend of defendant) asked her to "pick up some papers and car titles" from V.L. Pizarro traveled with her daughter to V.L.'s apartment on Halloween in 2006. Pizarro asked V.L. "what happened with [defendant]." V.L. replied that defendant saw her with another man and punched her in the mouth. Pizarro told V.L. that Pizarro's husband had said defendant had been charged with sexual assault. V.L. then told her two daughters to leave the room. V.L. told Pizarro, in her daughter's presence, that defendant "[n]ever raped [her]"; she only accused him of that because she knew "it would get him locked up for a long time." Once she got home, Pizarro related the conversation to her husband. About a week later, defendant called Pizarro's husband. Pizarro's husband put her on the phone with defendant, and she described her

conversation with V.L. Defendant asked Pizarro to call his lawyer. She then "called and spoke to [defendant's] lawyer and told him what [V.L.] told [her]." She gave the lawyer several phone numbers where she could be reached, but she never heard from the lawyer again.

¶ 12    The trial court granted the State's motion to dismiss the amended petition, but we reversed and remanded for an evidentiary hearing on defendant's claims. *People v. Cage*, 2021 IL App (2d) 190873-U.

¶ 13    The evidentiary hearing on defendant's amended postconviction petition occurred on November 1, 2022. Defendant testified that, in March 2007, he and pretrial counsel discussed a possible plea agreement.

¶ 14     Pretrial counsel showed defendant a list of charges to which he could plead guilty. Defendant testified that "[pretrial counsel] gave me a pen and told me to circle any charge on [the list] that I would be willing to take 11 years for, and I took the pen and circled the aggravated battery case." Pretrial counsel told defendant that the offer for him to "pick any charge" came from the prosecutor on the case, Kane County Assistant State's Attorney Greg Sams.

¶ 15    Defendant testified that he never saw or spoke with pretrial counsel again after the March 2007 conversation about a potential plea. On a subsequent court date, defendant saw trial counsel in court and learned that pretrial counsel no longer represented him. Trial counsel visited defendant in jail only once. That visit occurred on the first Saturday in June 2007. Defendant testified that trial counsel told him that the purpose of the visit was "to have [defendant] sign a paper saying that [defendant] would pay [trial counsel] $10,700 when this case is resolved." While trial counsel was showing defendant the paper, defendant noticed that trial counsel also had the April 26, 2007, letter offering defendant an 11-year prison sentence if he pleaded guilty to aggravated domestic battery. After reading the letter, defendant learned that the offer had expired. Before that visit, no

one had talked to defendant about the content of the letter. Defendant asked trial counsel why he had not mentioned the plea offer before. Defendant testified that "[trial counsel] told [him] the price of gas was extremely high and he couldn't speak with [defendant's] brother or mother about payment, and every time he talked about his payment, they wouldn't return his calls." Defendant's meeting with trial counsel lasted about six minutes.

¶ 16     Defendant testified that, on the day of trial, he told the trial court that the State had offered him 11 years' prison time.  According to defendant, the trial court "didn't want to hear anything else about any time or any plea agreements." That same day, defendant learned that the State had made a new offer whereby he would receive a 22-year prison term if he pleaded guilty to all the sex offense charges.

¶ 17     Defendant testified that, about two weeks after his arrest, he spoke with Pizarro by telephone. Pizarro's husband was also on the call. Based on what Pizarro told defendant, he asked her and her husband to contact trial counsel. Defendant gave Pizarro trial counsel's name and telephone number.

¶ 18     Reginald Henderson testified that he was defendant's brother. He provided the money to pay for private counsel for defendant. In June 2007, defendant called Henderson from jail. Defendant told Henderson that he was upset because, when trial counsel visited him, he saw an expired written plea offer among counsel's papers. Defendant asked Henderson to call trial counsel and ask if he "could *** get the deal back." Henderson tried calling trial counsel several times. When Henderson reached him, trial counsel asked whether Henderson had the rest of his money. Trial counsel refused to talk to Henderson until he "signed a paper about some payment arrangement." Trial counsel told Henderson that he could do nothing about the plea offer.

¶ 19    Pizarro testified that she was acquainted with defendant through her husband, but she and defendant were not friends. She knew V.L., whom she had met through a friend. She went to V.L.'s apartment on Halloween 2006. Her husband and daughter came along, but only she entered the apartment. V.L.'s children were present. V.L. told them to go to their room. Pizarro's husband needed to give defendant some papers, so she asked V.L. where defendant was. At that point, Pizarro was unaware that defendant and V.L. were in a relationship. V.L. told Pizarro that defendant was in jail for raping her but that it never happened. V.L. wanted defendant out of the house and she knew that defendant would be "put away for a long time."

¶ 20    While driving home, Pizarro related her conversation with V.L. to her husband. About a week later, defendant called Pizarro's husband from jail. Pizarro's husband put her on the phone, and she told defendant what V.L. had told her. After that, "[defendant] asked [her] to call his lawyer, and [she] called—[she] [could not] remember the lawyer's name because [it had] been so long." She also "called another lawyer and *** explained the situation"; she "gave them [her] number and [her] husband's number and nobody ever got back to [her]." She later testified that, when she called the number defendant gave her for his lawyer, she spoke to "someone" and "told them what happened." Asked if she "recall[ed] actually speaking to an attorney," she said, "I spoke to somebody; I don't know who it was." The person she spoke with indicated that a lawyer would call her back, but she never received a call from a lawyer. Pizarro reached out to the lawyer about six times.

¶ 21    On cross-examination, Pizarro testified that she did not recall whether defendant told her his lawyer's name, and she did not remember who she spoke with when she called the number defendant gave her. After being confronted with her affidavit, she testified that she "spoke to a lawyer." She immediately clarified that the person "told [her] he was a lawyer." She then said that

she spoke with two lawyers. One was in Joliet, and the other was in Chicago. She did not recall whether she ever contacted the police or the State's Attorney to inform them of her conversation with V.L.

¶ 22   Trial counsel testified that he had his own law practice in Joliet. His firm filed an appearance for defendant in August 2006. Pretrial counsel was either an employee of his firm or an independent contractor. Trial counsel testified that he could not locate his files for defendant's case. He recalled that defendant was in custody throughout the period he represented him.

¶ 23   Trial counsel testified that, on or about April 26, 2007, he received a letter from the prosecutor offering defendant an 11-year prison sentence in exchange for a plea of guilty of aggravated domestic battery. The offer was open until May 4, 2007. Trial counsel testified that, although he did not specifically recall communicating the offer to defendant, it was his practice to convey plea offers from the State to his clients "as soon as possible," but not always the same day he received the offer. Trial counsel adhered to this policy "[a]lmost 100 percent of the time" and could not recall when he did not relay an offer to a client. He testified that it was his duty to relay a plea offer to the client and that it was the client's choice whether to accept the offer. Trial counsel would have conveyed the 11-year plea offer to defendant in person at the jail or over the phone. Trial counsel spoke to defendant "quite a bit, especially the closer [they] got to trial. That [*sic*] 30, 45 days prior to trial, [they] were communicating quite bit [*sic*]."

¶ 24   Asked if he recalled whether defendant wanted to accept the 11-year plea offer, trial counsel answered, "I can tell you that *** [defendant] did not want to take the offer. I specifically remember this case as it relates to the offer because I remember speaking with his mother about the offer, with his brother about the offer." He recounted describing the offer to defendant's brother in the hallway outside the courtroom. Trial counsel recommended that defendant accept the offer.

Defendant's brother was very upset about the offer. When the brother started putting on black leather gloves, trial counsel feared he would be punched. Trial counsel testified that the prosecutor made a new plea offer on the day of trial, but defendant rejected it. Defendant was adamant about going to trial.

¶ 25    Trial counsel recalled meeting with defendant at the jail for trial preparation. Trial counsel spent a couple of hours with defendant. He did not recall when the meeting occurred, and he might have visited defendant at the jail on other occasions. Trial counsel recalled having more than one telephone conversation with defendant, and it was likely that they discussed the State's plea offer on the phone. Trial counsel thought it was a fair offer and that the State's case against defendant was compelling. Trial counsel also acknowledged that, given that his firm had sought to withdraw due to nonpayment of fees, it would have been more cost effective not to proceed to trial. Trial counsel did not recall ever receiving a call from Pizarro.

¶ 26    Sams testified that he was the lead prosecutor on defendant's case in 2006 and 2007. Sams said that he would never have instructed pretrial counsel to present defendant with a list of charges and allow defendant to choose which charge he would plead guilty to. Sams acknowledged extending to trial counsel an offer for defendant to plead guilty to aggravated domestic battery in exchange for an 11-year prison term. The offer was extended on April 26, 2007, and would expire on May 4, 2007. Defendant did not accept the offer. Sams recalled extending a new plea offer on the day of trial. However, having previously offered an 11-year prison term in exchange for a plea of guilty to the charge of aggravated domestic battery, he would not have made a new offer increasing the prison term to 22 years in exchange for a guilty plea on all the sex offense charges. Sams was "almost certain" that, if he did not renew the 11-year offer, he would have made defendant an offer of less than 11 years.

¶ 27    The trial court denied defendant's postconviction petition in a lengthy written order. The court found Pizarro not credible based on (1) inconsistencies between her affidavit and her testimony, (2) "her inability to recall details of her actions after speaking with [defendant] on the telephone," and (3) contradictions between defendant's and Pizarro's testimony. The court concluded that trial counsel was never made aware of Pizarro.

¶ 28    On the issue of the plea offer for 11 years, the trial court found "overwhelming evidence that the plea offer was communicated." The court found Sams and trial counsel credible and found defendant and Henderson not credible. For instance, the court credited trial counsel's testimony that, while he had no specific recollection of conveying the 11-year offer to defendant, his practice was to timely convey plea offers to clients. The court found corroboration for trial counsel's testimony in defendant's references on June 18, 2007 (the first day of trial), to a plea offer conveyed by trial counsel. The court explained:

> "[Defendant] told [the trial court] that [trial counsel] recommended he 'take' a certain amount of time. The [c]ourt can infer that [trial counsel] conveyed an offer with a set amount of time and recommended that [defendant] accept it. The reference to the 11 years 'he' or [trial counsel] brought him is consistent with the 11 year offer in the letter from *** Sams dated April 26, 2007."

The court "[found] that [defendant's] allegation that [trial counsel] failed to convey the offer outlined in the letter dated April 26, 2007[,] [was] not credible."

¶ 29    Defendant timely appeals.

¶ 30                                    II. ANALYSIS

¶ 31    Defendant argues that the trial court erred in denying his amended petition for relief under the Act. The Act establishes a three-stage procedure for evaluating claims that a defendant's

conviction resulted from a substantial constitutional violation. 725 ILCS 5/122-1 *et seq.* (West 2010); *People v. Agee*, 2023 IL 128413, ¶ 36. In the first stage, the court independently reviews the defendant's petition within 90 days after it is filed and docketed. 725 ILCS 5/122-2.1(a) (West 2010). If the court finds the petition is frivolous or is patently without merit, the petition will be summarily dismissed. *Id.* § 122-2.1(a)(2). Otherwise, the petition proceeds to the second stage, at which indigent defendants are entitled to appointed counsel (*id.* § 122-4) and counsel may amend the petition (*People v. Quezada*, 2024 IL App (2d) 210076-B, ¶ 12). The State may then move to dismiss the petition. *Id.* To survive a motion to dismiss, the petition must make a substantial showing of a constitutional violation. *Id.* If the petition is not dismissed at the second stage, it proceeds to the third stage, in which the court conducts an evidentiary hearing. *Agee*, 2023 IL 128413, ¶ 37.

¶ 32    Defendant appeals the denial of his petition after a third-stage evidentiary hearing. As we have recently observed:

> "When a postconviction petition advances to a third-stage evidentiary hearing, *** the trial court conducts an evidentiary hearing and the defendant bears the burden of showing, by a preponderance of the evidence, a substantial violation of a constitutional right. [Citation.] The trial court acts as the finder of fact at the evidentiary hearing. [Citation.] The court's factual findings and credibility determinations will not be disturbed unless they are 'manifestly erroneous.' [Citation.] A decision is manifestly erroneous only if it contains error that is clearly evident, clearly plain, and indisputable. [Citation.] ***."
> *People v. Marcus*, 2023 IL App (2d) 220096, ¶ 59.

¶ 33    We initially note that the State argues that defendant forfeited his postconviction claims of ineffective assistance of counsel by failing to raise them either in his posttrial motion or on direct

appeal. It is well established that "[a] postconviction proceeding is a collateral attack on a final judgment, and constitutional issues that were raised and decided on direct appeal are barred from postconviction consideration by the doctrine of *res judicata*, while issues that could have been raised, but were not, are forfeited." *People v. Wilson*, 2023 IL 127666, ¶ 22. However, "[a] postconviction claim that depends on matters outside the record, *** is not ordinarily forfeited because such matters may not be raised on direct appeal." *People v. Brown*, 2014 IL App (1st) 122549, ¶ 41. Defendant's claims are based on matters outside the trial record. Nonetheless, the State argues that the claims are forfeited because (1) they pertain to trial counsel's performance, (2) defendant had new counsel representing him in connection with his posttrial motion, and (3) new counsel could have made a record that would have facilitated review of the claims on direct appeal. The only cases the State cites in support of this theory of forfeiture are inapposite because they consider only whether the defendant forfeited ineffective-assistance claims *on direct appeal* by failing to raise the claims in a *posttrial* motion. See *People v. Ramos*, 339 Ill. App. 3d 891, 900 (2003); see also *People v. Fretch*, 2017 IL App (2d) 151107, ¶ 136; *People v. Salgado*, 366 Ill. App. 3d 596, 607 (2006). The State cites no authority finding a claim forfeited in *postconviction* proceedings because the defendant failed to develop a factual record in *posttrial* proceedings.

¶ 34    Turning to the merits, we first consider defendant's claim that trial counsel rendered ineffective assistance to defendant by failing to inform him of a favorable plea offer from the State until after the offer expired. To establish a deprivation of the constitutional right of the effective assistance of counsel, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.' "

*People v. Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Trial counsel has a duty to convey to the defendant "formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). "When defense counsel allows an offer to expire without advising the defendant or permitting him or her to consider it, the defense counsel fails to render effective assistance under the sixth amendment." *People v. Ryburn*, 2019 IL App (4th) 170779, ¶ 41.

¶ 35    Defendant argues that he made a "substantial showing" that trial counsel performed deficiently by failing to timely inform him of a favorable plea offer and that the State did not "conclusively refute[ ]" that showing. Although a documentary "substantial showing" of a constitutional violation entitles a defendant to an evidentiary hearing on a postconviction petition (*Agee*, 2023 IL 128413, ¶ 37), he must prove a constitutional violation by a preponderance of the evidence to obtain relief (see *Marcus*, 2023 IL App (2d) 220096, ¶ 59). A litigant satisfies this burden of proof by presenting evidence that renders a fact in issue more probable than not. *In re D.A.*, 2022 IL App (2d) 210676, ¶ 14. A defendant who fails to meet this burden of proof is not entitled to postconviction relief merely because the State fails to "conclusively refute" the defendant's claims. Here, it was defendant's burden to prove by a preponderance of the evidence that trial counsel failed to convey the State's offer in a timely manner.

¶ 36    Nonetheless, the State did, in fact, present considerable evidence that defendant was timely informed of the plea offer. Before discussing that evidence, we note the trial court's reliance on defendant's comments on June 18, 2007, the first day of trial, to "find[ ] that [defendant's] allegation that [trial counsel] failed to convey the offer outlined in the letter dated April 26, 2007[,] is not credible." Defendant made two comments alluding to a plea offer. However, defendant was vague as to (1) whether he was speaking of one offer or two and (2) when trial counsel conveyed

the offer(s) to him. Defendant reasonably infers that, when he recounted to the trial court that trial counsel surprisingly appeared in court one day and encouraged defendant to "take this amount of time," defendant was referring to the April 13, 2007, court date, which occurred several days *before* the date the State made the 11-year offer.

¶ 37　However, the trial court relied only secondarily on defendant's remarks on June 18, 2007; the court relied primarily on trial counsel's testimony, which the court found credible. Trial counsel recalled discussing the 11-year plea offer with defendant and recommending that defendant take it. Trial counsel further recalled that defendant did not want to accept the offer. Trial counsel also remembered a separate occasion in which he discussed the offer with defendant's brother and recommended that defendant take the offer. Although trial counsel did not recall specifically when these discussions occurred, trial counsel would have had no reason to discuss the plea offer with defendant or a family member—much less recommended accepting it— if the offer had already expired. Defendant stresses trial counsel's inability to recall precisely when or how he informed defendant of the State's offer. Given that the hearing on defendant's petition took place more than 15 years after defendant's trial, it is unsurprising that trial counsel could not remember the events in granular detail.

¶ 38　Despite trial counsel's inability to recall specifically when he conveyed the 11-year offer to defendant, trial counsel testified that his practice was to convey a plea offer to the client "as soon as possible," though not always on the same day he received the offer. Trial counsel considered it his duty to timely convey a plea offer, because the choice whether to accept or reject an offer belonged to the client.

¶ 39　Although it does not represent the view of a majority of the court, Justice Schmidt's opinion announcing the judgment in *People v Jellis*, 2016 IL App (3d) 130779, ¶¶ 1-45 (opinion of

Schmidt, J., with Holdridge, J., specially concurring, and McDade, J., dissenting) is instructive. Similar to this case, *Jellis* involved a postconviction claim that the defendant's attorney failed to convey a plea offer in the defendant's prosecution for home invasion and sexual assault. *Id.* ¶ 8. The defendant raised the claim in a successive postconviction petition filed nearly 20 years after his trial. *Id.* ¶¶ 8, 37. The successive petition proceeded to an evidentiary hearing, at which it was established that, before trial, the prosecutor wrote to defense counsel and offered the defendant a 30-year prison sentence if the defendant entered a guilty plea. *Id.* ¶¶ 10, 16. The prosecutor testified that defense counsel had advised him that the defendant would not accept the offer but wanted to know if the State would offer a lower sentence. *Id.* ¶ 16. The defendant testified that he was never informed of the offer. *Id.* ¶ 13. Defense counsel testified that he could not recall either the prosecutor's letter offering a plea agreement or the offer itself. *Id.* ¶ 17. He testified, however, that it was his practice to convey plea offers to his clients. *Id.* Defense counsel maintained a notebook summarizing the cases he handled. *Id.* The notebook documented the State's 30-year plea offer but did not indicate whether defense counsel ever discussed the offer with the defendant. *Id.*

¶ 40    Although the trial court in *Jellis* found that defense counsel failed to convey the plea offer to the defendant, Justice Schmidt found that "the evidence overwhelmingly supports a finding that the plea offer was, in fact, communicated to [the] defendant." *Id.* ¶ 36. Justice Schmidt reasoned, in part, as follows:

"[The] defendant's attorney testified that it was his regular practice to communicate plea offers to his clients in every case, especially felony cases. Given that nearly 20 years had passed between the trial and defendant's successive postconviction petition, it is understandable that defense counsel could not specifically recall conveying the offer to [the] defendant. Further, we find no basis in the record to believe that defense counsel

would not have followed his regular practice and communicated the 30-year offer to [the] defendant. Considered together, the evidence at the third-stage hearing demonstrates that [the] defendant was made aware of the 30-year plea offer." *Id.* ¶ 37.

¶ 41 Likewise, the trial court here was entitled to conclude that trial counsel followed his usual practice of timely conveying plea offers to clients.

¶ 42 Defendant attempts to distinguish *Jellis* because, there, defense counsel kept a notebook that documented the State's plea offer. The distinction is of no significance. Trial counsel here recalled the terms of the plea offer but did not specifically recall when he conveyed the offer to defendant. Defense counsel's notebook in *Jellis* documented the plea offer but did not indicate whether defense counsel discussed the offer with the defendant. Thus, the evidence in *Jellis* of a *conveyed* plea offer was no more direct than here. Defendant also argues that, unlike in *Jellis*, counsel here "had [a] motive to deviate from his 'habit' [of informing clients of plea offers]—he was not being properly compensated for his representation." However, as trial counsel testified, it would not be cost-effective to take a case to trial on behalf of a nonpaying client. Therefore, it would be at least as reasonable to conclude that trial counsel would be happy to see defendant accept the plea offer, sparing trial counsel the burden of trying the case without payment.

¶ 43 Defendant also insists that trial counsel's testimony about his customary practice "did nothing to answer the crucial question of whether he conveyed the offer to [defendant] within the brief window that it was open." Presumably, in defendant's view, when trial counsel said his practice was to convey the offer "as soon as possible," he did not necessarily mean he would convey the offer before it expired. The argument is unpersuasive. It was implicit in trial counsel's testimony that he would convey plea offers to his clients before the offers expired. As discussed, trial counsel's practice regarding plea offers was rooted in the principle that the choice whether to

accept or reject a plea offer belonged to the client. To convey an expired offer to a client would defeat the purpose of this practice.

¶ 44 Noting his own testimony that trial counsel's sole visit with him at the jail took place after the offer expired, defendant contends that because trial counsel had no recollection of any of his telephone conversations with defendant, "it was more likely than not that [trial counsel] discussed the plea offer with [defendant] during his visit to the county jail, not on the telephone." We fail to see the logic supporting this conclusion. It is hardly surprising that trial counsel had no specific recollection of telephone conversations 15 years earlier. His inability to recall what was discussed is not evidence that any particular subject was or was not discussed. Further, it does not undermine his testimony that his practice was to promptly inform clients of plea offers after receiving them.

¶ 45 Defendant also attaches significance to the fact that, although trial counsel could not recall when he told defendant about the offer, he remembered speaking with defendant's brother about it at the courthouse. Defendant contends that there were no court dates during the period the plea offer was pending, so the conversation must have occurred after the offer expired. However, we fail to see how this point has any bearing on the question of when trial counsel advised *defendant* of the plea offer.

¶ 46 The trial court found trial counsel's testimony credible, and it is not our function to disturb the trial court's credibility determinations unless they are manifestly erroneous. That is simply not the case here. Trial counsel's testimony was sufficient to support the trial court's finding that the April 26, 2007, plea offer was presented to defendant before it expired. We, therefore, find no manifest error in the trial court's rejection of defendant's claim that trial counsel failed to timely convey a plea offer.

¶ 47    We next consider defendant's claim that he was deprived of the effective assistance of counsel because trial counsel did not investigate a potential defense witness, Pizarro, who could have impeached the complaining witness's testimony. The trial court rejected the argument, concluding that trial counsel was unaware of Pizarro. The court reached this conclusion after determining that Pizarro's testimony was not credible. The court noted (1) discrepancies between Pizarro's testimony and her affidavit, (2) Pizarro's inability to recall the details of what occurred after her telephone conversation with defendant, and (3) inconsistencies between Pizarro's testimony and defendant's.

¶ 48    We cannot say the trial court's determination was manifestly erroneous. In her affidavit, executed in 2017, Pizarro recounted in considerable detail events that occurred more than a decade earlier. Her recollection of those events seemed to fade considerably in the five years between the affidavit and her testimony at the evidentiary hearing. For instance, (1) Pizarro averred that she and her daughter went to V.L.'s apartment, while she testified that she, her daughter, *and* her husband went to V.L.'s; (2) Pizarro averred that she and her daughter went into V.L.'s apartment, but she testified that she alone went into V.L.'s apartment; and (3) Pizarro indicated in her affidavit that she already knew when she visited V.L. that defendant had been charged with sexual assault, but she testified that she was unaware of the charges until V.L. told her about them (indeed, her testimony seemed to suggest that she expected to deliver papers to defendant personally).

¶ 49    Also, while Pizarro averred that, after she spoke with defendant, she "called and spoke to [defendant's] lawyer," her testimony about her phone contact fluctuated. When asked if she actually spoke to an attorney, she testified that she spoke to someone who said an attorney would call her back. Later, when confronted with her affidavit, she testified that she spoke to an attorney, but then she clarified that she spoke to someone who claimed to be an attorney. Additionally,

despite the passage of time, we would expect Pizarro to have at least some recollection of whether she contacted the police or the State's Attorney to advise them of her conversation with V.L.

¶ 50    Furthermore, defendant and Pizarro presented irreconcilable timelines. Defendant testified that he spoke with Pizarro two weeks after his July 2006 arrest. However, according to both Pizarro's affidavit and testimony, they would not have spoken until November of that year. Moreover, defendant would apparently have us believe that he relied solely on Pizarro to convey her conversation with V.L. to his attorneys. He never testified that he personally relayed the information to trial counsel, even though trial counsel testified that he had extensive communications with defendant. We cannot say the trial court's finding that Pizarro's testimony was not credible was manifestly erroneous.

¶ 51                    III. CONCLUSION

¶ 52    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 53    Affirmed.